## CHAMBERS et ux. v. McCREERY et al.

### (Circuit Court of Appeals, Fourth Circuit. February 7, 1901.)

### No. 374.

1. GIFTS—EVIDENCE TO ESTABLISH—DECLARATIONS.

A gift cannot be established by proof of declarations of the claimed donor that he had given the property to the claimant, in the absence of an actual delivery, and the fact of delivery must be shown by other evidence than such declaration.

2. SAME—INSUFFICIENT PROOF OF DELIVERY.

Complainant claimed certain bonds as a gift from her former husband. The bonds had been kept by the husband for some years before his death in a box in a safe-deposit vault. After his marriage to complainant he stated to the custodian that he wished his wife to have access to the box, and a statement reading, "I authorize my wife [naming her] to have access to this box, and control its contents," signed by both husband and wife, was placed upon the box. The husband, however, continued after the claimed gift to take the coupons from the bonds as they matured, his wife sometimes going with him, and to place the same to his own credit in the bank, and he also sold some of the bonds and used the proceeds. After his death complainant had both keys to the box in her possession, but there was no evidence that her husband had given her his key with intent to divest himself of title to, or possession of, the bonds. *Held*, that

there was no such delivery of the bonds as to constitute a completed gift, and that declarations by the husband to third persons that he had given the bonds to his wife were insufficient to establish such gift.

Appeal from the Circuit Court of the United States for the District of West Virginia, at Charleston. ·

Malcomb Jackson and J. F. Brown (J. H. McGinnis and Brown, Jackson & Knight, on briefs), for appellants.

C. C. Watts (John W. McCreery and Watts & Ashby, on briefs), for appellees.

Before GOFF and SIMONTON, Circuit Judges, and PURNELL, District Judge.

GOFF, Circuit Judge. The complainant Lockey F. Chambers, now the wife of her co-complainant, T. W. Chambers, was formerly the widow of Edwin Prince, now deceased, who, at the time of his death, was a resident of the state of West Virginia. After the death of her former husband, she married the said T. W. Chambers, and they are now citizens and residents of the state of Missouri. They filed their bill in equity in the court below, from which it appears that complainants pray for a decree against the executor of the last will and testament of Edwin Prince, deceased, in favor of said Lockey F. Chambers, for the delivery of certain bonds, or for the amount received from the sale of the same, claimed by such executor as assets of said estate, but which are also claimed by Lockey F. Chambers as her own property. Complainants allege that in the lifetime of Edwin Prince, and during the time the said Lockey F. was his wife, he made her a gift of certain negotiable coupon bonds, payable to bearer, then deposited in the safe-deposit vault of the Third National Bank of the City of Cincinnati, Ohio, and that he, at the time he so made such gift, delivered to her the possession of said bonds, she becoming thereby vested with a full and valid title to the same; that the bonds so given her were 5 bonds of the Cincinnati, Hamilton & Dayton Railroad Company, each for the sum of $1,000, bearing interest at the rate of 4½ per cent. per annum, and 14 bonds of the city of Cincinnati, each for the sum of $1,000, bearing interest at the rate of 4 per cent. per annum. The interest on all the bonds was payable semiannually, as shown by the coupons attached to them. In his answer to this bill, the executor denied that Edwin Prince made the gift to the complainant Lockey F. of the bonds claimed by her, and denied that he ever gave her the possession of the same, and further denied that she ever at any time had either legal or equitable title to said bonds or any of them. He claimed the bonds as assets of the estate he was administering. He averred the facts relating to them to be that Edwin Prince in his lifetime purchased them with his own funds, and kept them in the deposit vault of the Third National Bank, at Cincinnati, having rented a box for that purpose. After his death the complainant Lockey F., without authority so to do, took the key of the deposit box, which had been retained by said decedent, and went to Cincinnati for the purpose of securing possession of said bonds, but, as she was refused access to the

box by the officials of the bank, she telegraphed the executor to join her in that city, which he did, and that after consultation and consideration an agreement was entered into, of which the following is a copy, to wit:

"Whereas, Edwin Prince, who died at Raleigh C. H., W. Va., December 5, 1894, had rented during his lifetime box 2,807, in the safety-deposit department of the Third National Bank, of Cincinnati, Ohio; and whereas, his widow, Mrs. Lockey F. Prince, has in her possession the keys to said box, and claims to own the contents thereof in her own right, and to have possession thereof; and whereas, Burk Prince, as executor under the last will and testament of said Edwin Prince, claims the possession and ownership of the contents of said box for and on behalf of the estate of said Edwin Prince, deceased: Now, therefore, in order to avoid litigation at Cincinnati, and with the purpose of hereafter testing the question as to the ownership and right of possession of the contents of said box in the West Virginia courts or elsewhere as may be deemed advisable, and without waiving any right or claim on her part in said matter, said Mrs. Lockey F. Prince agrees to and does hereby transfer to Mr. Hearne, the president of said bank, the keys to said box, and authorizes him to allow said executor to take the contents of said box into his possession, reserving all her right and claim upon said contents for further consideration and action, as she may see fit hereafter; provided, however, that said bank shall at the time of the opening of said box cause an accurate schedule of the contents of said box to be made in detail, and handed to her, or to her attorney, L. W. Goss, without delay; and provided, further, that nothing herein contained shall be construed into an admission by said Burk Prince that Mrs. Lockey F. Prince has the rightful and lawful possession of said keys, or that there is any foundation for the claim which she makes to the contents of said box."

This agreement was dated December 15, 1894, and was signed in duplicate by said complainant Lockey F. Prince, and the executor, Burk Prince.

It was further set out in the answer of said executor that, at the time of the marriage of Edwin Prince to the complainant Lockey F., the former was 65 years of age, a widower having children and grandchildren (some of whom are named as beneficiaries in his will), and the latter was 28 years of age, possessed of no property, and employed as a domestic in a family living where said Prince resided; that the estate of said decedent was worth about $65,000, of which the complainant Lockey F. received about $30,000, under the provisions of the will of said decedent; that the residue of the estate was to be distributed among his legatees as directed by the will, the executor being authorized to sell his bonds, mortgages, securities, and lands for that purpose.

The case was fully matured, and came on regularly to be heard, the depositions of a large number of witnesses having been taken, which were read to, and considered by, the court, as was the testimony of a number who were examined in open court at the time of the submission. The court below entered a decree refusing the relief asked for and dismissing complainants' bill. 98 Fed. 783. From that decree the appeal now before us was asked for and granted. The assignment of errors, while four in number, in substance are that the court below erred in finding that the complainants had failed to establish a gift of the bonds in controversy to complainant Lockey F. Chambers by Edwin Prince in his lifetime.

There is much in the record that it will not be necessary for this court to consider, for there is but one issue made by the pleadings, and that is, were the bonds owned by Edwin Prince and kept in his box in the deposit vault of the Third National Bank of Cincinnati given by him in his lifetime to his then wife, the complainant Lockey F. Chambers? Including the bonds in controversy, the estate left by Edwin Prince was worth about $65,000. It was during his lifetime his own, and it was his right to dispose of it as to him seemed best. By his will he gave to the complainant Lockey F. about $30,000, leaving the residue for distribution among his children. He was a man of more than ordinary intelligence, ripe in experience as well as years, and well acquainted with the affairs and the requirements of the community in which he lived and moved. He knew how to dispose of his property by will, and he was careful to scrupulously observe all of the legal essentials in the preparation and execution of that instrument. Presumably he was properly informed as to the course he should pursue, and of the requirements of the law relative to gifts made by him during his lifetime of portions of his property. His will is binding on all to-day, simply because the requirements of the law have been respected. If he really intended to give his wife the bonds mentioned, then the failure to consummate that intention must be attributed to his neglect to observe the ordinary formalities essential in matters of that kind. The fault is in his failure to act, for courts can only enforce such gifts in cases where the donor has acted so as to justify a decree of that character.

Of the witnesses introduced by complainants, four of them testify as to the gift of the bonds by Edwin Prince to his then wife. They, in substance, say that Edwin Prince said, in their hearing, he had given to his wife for her own use some bonds he had in the deposit vault; that no one knew he had such bonds, but he had made her a present of them; that he gave her the key to the box or drawer, and had introduced her at the bank, so that she could have access to the box any time she saw fit to go to it; that he said his children did not like the idea of his marrying again, and he knew that after his death there would be some trouble, as they would take advantage of his wife as much as they could, and for that reason, so she would not be dependent on them after his death, he had provided her with some bonds, which she kept in the Third National Bank in Cincinnati, in one of the safe-deposit boxes, put there in her name; and that he had given her the key, for she was taking such excellent care of him that he owed it to her to make such provision for her. The complainants also proved that on the box mentioned was a memorandum signed by Edwin Prince and Lockey F. Prince, made over a year after he rented it, in these words: "I authorize my wife Lockey F. Prince to have access to this box and control its contents." There is no other legal testimony in the record directly applicable to the matter of the gift of the bonds, but considerable that indirectly has a bearing thereon.

We search the record in vain for any testimony showing that Edwin Prince ever delivered the possession of the bonds in controversy to the complainant Lockey F. Chambers. On that point the evidence

should be clear and positive, and in the absence of proof of absolute possession of the subject of the gift by the donee, free from the control of the donor, the mere declarations of the latter will not be sufficient to establish delivery. It will be well to examine the declarations of Mr. Prince relating to the gift of the bonds in the light of other well-established facts in this case. The witnesses differ as to the time when Mr. Prince so talked, some having it a few months and others over a year before his death. The box was rented by Prince, April 25, 1890, and retained by him in his own name until his death, on December 5, 1894. The memorandum attached to the box, authorizing his wife to have access to it and to control its contents, was placed there about a year after he rented the box. The custodian of the bank vault testifies that this writing was in the form generally used by the bank officials, and was made at his suggestion, signed by Mrs. Prince, as well as Mr. Prince, as the latter had said that he desired his wife to have access to the box, and he further stated that the memorandum was signed as aforesaid in order that he would thereby have the signatures of both of them for purposes of identification. He also testified that Mr. Prince gave as a reason for said writing on the box that he might be sick at the hotel and want her to get something from it. It is alleged in the bill of complaint that the bonds were given to Mrs. Chambers in the early part of the year 1890, and that possession of the same was then delivered to her. It is shown by the evidence that Mr. Prince after that date frequently opened the box, his wife often being with him, and had the coupons cut from the bonds, the proceeds of which were always placed to his credit in the bank, and drawn out by him on his own check in his business transactions. It is also shown that, for several years thereafter, he, when making a list of the items constituting the property then owned by him, always included the bonds in the box as part thereof, both listing and valuing them as such. The evidence also shows that at least five of the bonds placed in the box in the year 1890 were not there in 1894 when Mr. Prince died, but had been sold by him in his lifetime, and others substituted that had been purchased by him subsequent to the time when complainants claim the contents of the box had been given to his wife. It is proven that Mr. Prince, in the year 1894, took from said box one of the bonds, issued by the city of Cincinnati, for $1,000, and sold the same, using the proceeds himself.

A gift inter vivos goes into immediate effect, is absolute and irrevocable, and to render it complete there must be an actual delivery of the subject-matter of the gift,—the manner of the delivery being to a great extent governed by the character of the thing delivered,— but without such delivery the title does not pass. The effect of the delivery is that the donor parts, not only with the possession, but with dominion over, and control of, the property so delivered. Basket v. Hassell, 107 U. S. 602, 2 Sup. Ct. 415, 27 L. Ed. 500; Miller v. Jeffress, 4 Grat. 472; Hatch v. Atkinson, 56 Me. 324, 96 Am. Dec. 464; Williamson v. Johnson, 62 Vt. 378, 20 Atl. 279, 22 Am. St. Rep. 117, 9 L. R. A. 277; Love v. Francis, 63 Mich. 181, 29 N. W. 843, 6 Am. St. Rep. 290; Institution v. Hathorn, 88 Me. 122, 33 Atl. 836,

51 Am. St. Rep. 382, 32 L. R. A. 377; Welch v. Henshaw, 170 Mass. 409, 49 N. E. 659, 64 Am. St. Rep. 309; Martin v. Smith, 25 W. Va. 579; Dickeschied v. Bank, 28 W. Va. 340.

It will be impossible to apply the facts as we find them to be in the case we have now to decide with the law we have just referred to, and thereby sustain the contention of the complainants below. The "constructive delivery," insisted on by counsel for appellants, is inconsistent with the conduct of the alleged donor from the date of the declarations made by him from which the delivery is said to be inferred to the day of his death. It seems clear to us that Prince did not intend to part with his dominion over the bonds placed by him in the safe of the bank, and surely his wife was not invested with such title thereto as to devest him of control over them. Unless she was, it was not such a gift as a court of equity, under the circumstances of this case, should enforce. Could not Edwin Prince, at any time after he placed the bonds in the box, down to the time he lost consciousness, a few days before his death, have removed them, or transferred them to another by proper assignment? Most undoubtedly he could have done so. Would not such action on his part have been recognized by the officers of the bank who held them for him? Certainly, is the reply, from their testimony. They had never been advised of the gift to Mrs. Prince, nor told that Edwin Prince could no longer control them. As a matter of fact, did he not continue to control the contents of the box, and did he not remove and dispose of some of the bonds, after the time complainants claim he had given them to his wife? The record says that he did.

The fact that his widow after his death had possession of both of the keys to the box is not, in the light of the evidence before us, very strong evidence in her favor. On the contrary, possession of them, without clear and positive evidence of delivery by the husband, with the intent of devesting himself of title, is rather an element of weakness than of strength. Possession by the donee under such circumstances is immaterial, but delivery to such donee by the donor of the thing given is most material. He told the custodian of the vault that he wanted his wife to have access to the box, and he had told others that he had given her a key for that purpose, but he had several times used a key himself subsequent to that time, and had so deported himself relative to the contents of said box as to clearly show that he then still claimed both the ownership and control of the same. She resided with him, was with him always, had charge of his person and of his property, and access to all of his effects, including his safe, which she opened a few days before his death, and after he had closed it for the last time. It does not follow from this that her action was improper or her conduct dishonest, but the law is that one who claims a gift from another with whom the party so claiming has lived intimately and confidentially, as did this wife with her husband, shall be required to show by evidence, free from personal interest and not equivocal in character, that the property claimed was delivered to the donee during the donor's lifetime, and controlled by the former while the latter lived.

The declarations of Prince that he had given the bonds in the box

to his wife will not aid her in her claim to them, unless they are accompanied with the proof of such actual delivery as devested him of his title to them, and would have rendered it impossible for him to have again exercised control over them. Ewing v. Ewing, 2 Leigh, 337; Liebe v. Battmann, 33 Or. 241, 72 Am. St. Rep. 705. It is now well settled that the declarations of a donor that he had given the property in controversy to the claimant thereof will not perfect a gift incomplete for want of actual delivery, and the fact of delivery must be shown by other evidence than the mere declaration of the donor. Rockwood v. Wiggin, 16 Gray, 402; Yancy v. Field, 85 Va. 756, 8 S. E. 721. A number of the authorities we have cited refer to cases causa mortis, but they are nevertheless applicable; for, so far as the question of delivery is concerned, there is no difference between gifts of that character and gifts inter vivos, as actual delivery is absolutely essential in both cases.

The insistence of counsel for appellants that the gift of the bonds to Mrs. Chambers was fully consummated—"a thing done by the donor and not a thing intended"—is not sustained by the testimony, and is, for reasons we have stated, without merit. All controversies of this character must be determined from their own peculiar facts, and in this case the evidence offered by the appellants is most unsatisfactory. Said evidence is not sufficient to prove that the bonds in controversy were ever so given or delivered as to devest the right and title of Edwin Prince thereto, and vest the same in Lockey F. Chambers. We find no error in the decree appealed from, and the same is affirmed.