Atchley v. Rimmer.

## W. P. ATCHLEY v. NELL RIMMER et al.*

### (Knoxville. September Term, 1923.)

1. GIFTS. Mere possession of note alleged to be gift held not to raise presumption of ownership in possessor.

In a suit by an executor to recover possession of a note payable to deceased but claimed by defendant as a gift from deceased, the mere possession of the note by defendant after decedent's death did not raise a presumption of ownership. (Post, pp. 307-311.

Cases cited and distinguished: Mason v. Willhite, 61 S. W., 298; Roy v. Duff, 170 Iowa, 319; Gano v. McCarthy, 79 Ky., 409.

2. GIFTS. Possession by alleged donee of little weight where such possession can be accounted for in another way than that of gift.

That a person, claiming property as a gift, has it in his possession after the death of the alleged donor, has little, if any, weight, where claimant has had access to the property and effects of his alleged donor during his last sickness or after his death, or where its possession can be reasonably accounted for in any other way. (Post, pp. 311, 312.)

Cases cited and approved: Maxler v. Hawk, 233 Pa., 316; Chambers v. McCreery, 106 Fed., 364.

3. GIFTS. Testimony of beneficiary alone held insufficient to establish gift from decedent.

In a suit by an executor to recover possession of a note payable to decedent and claimed by defendant as a gift from him, the testimony of the beneficiaries of the gift was insufficient to show delivery when uncorroborated by other evidence. (Post, pp. 312, 313.)

*On question as to whether proof of delivery essential to gift rests upon subsequent declarations of donor alone, see note in L. R. A., 1916E, 288.

On sufficiency of constructive delivery to sustain gift causa mortis, see note in 18 L. R. A., 170.

4. WITNESSES. Alleged donee of gift from deceased held incompetent in suit by executor to testify as to conversations with deceased.

In a suit by an executor to recover possession of a note payable to deceased, and which defendant claimed as a gift from deceased, defendant was not competent to testify as to transactions and conversations with deceased under Shannon's Code, section 5598, though specified amounts were bequeathed to defendant and another from the proceeds of the note, it being the plaintiff's duty to take charge of the assets of the estate, and distribute the proceeds to the beneficiaries named. (*Post, pp.* 313-318.)

Cases cited and approved: Gibson v. Parkey, 142 Tenn., 99; Turner v. Huggins, 130 Tenn., 181; Hale v. Kearly, 67 Tenn., 49.

Cases cited and distinguished: Gibson v. Buis, 142 Tenn., 133; Harris v. Cable, 113 Mich., 192.

Code cited and construed: Secs. 4026, 5598 (S.)

5. GIFTS. Delivery and intent to give essential.

Delivery and intention to give must accompany each other to make a valid gift. (*Post, pp.* 319-325.)

6. GIFTS. When mere declaration of donor that he has made gift insufficient to establish it stated.

To establish a gift, the fact of delivery must be shown by other evidence than the mere declaration of the donor, when such declaration goes no further than to express a gift, and fails either distinctly to state a delivery or facts from which actual delivery may be inferred. (*Post, pp.* 319-325.)

Cases cited and approved:) Davis v. Davis, 1 Nott & McC. (S.C.), 225; Fouts v. Nance, 55 Okla., 266; Ewing v. Ewing, 2 Leigh, 337; Liebe v. Battmann, 33 Or., 241; Rockwood v. Wiggins, 16 Gray, 402; Yancy v. Field, 85 Va., 756.

Cases cited and distinguished: Ridden v. Thrall, 125 N. Y., 572; Keepers v. Fidelity Title & D. Co., 56 N. J. Law, 302; Chamber v. McCreery, 106 Fed., 364.

7. GIFTS. Evidence held insufficient to establish gift.

In an action by an executor to recover possession of a note pay-

Atchley v. Rimmer.

able to decedent, which defendant claimed decedent had given to her, evidence *held* insufficient to establish the gift. (*Post, p.* 325.)

## FROM JEFFERSON.

Appeal from the Chancery Court of Jefferson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. M. H. GAMBLE, Chancellor.

TURNER, KENNERLY & CATE and S. O. HOUSTON, for Atchley.

J. H. BUNDREN, H. M. RANKIN, W. A. SWANN and E. R. TAYLOR, for Rimmer and others.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

The record in this case presents a controversy between the complainant, W. P. Atchley, executor of George Walker, deceased, on the one side, and the defendant, Mrs Nell Rimmer, on the other side, as to the ownership of a certain $8,000 note executed by J. H. Rimmer and S. H. Rimmer to the said Walker. The complainant bases his claim to the ownership of said note under the will of said Walker. The defendant, Mrs. Nell Rimmer, asserts ownership of the note by gift *inter vivos* from the said Walker.

Mrs. Rimmer and Mrs. Zenia Atchley, wife of the complainant, are sisters, and were nieces of George Walker. Mrs. Atchley lived with her husband at Knoxville; Mrs. Rimmer lived with her husband in Jefferson county.

148 Tenn.—20

Walker was a bachelor about seventy years of age at the time of his death, and owned real estate near the Rimmers, and for several years immediately preceding his death made his home with them.   On August 22, 1919, J. H. Rimmer and his brother, Shade Rimmer, executed their joint promissory note to Walker for $8,000, and to secure the payment thereof they executed a deed of trust on a tract of land in Jefferson county.   The exact nature of this land transaction does not clearly appear in the record, but it seems that the $8,000 note represented balance of purchase money which the Rimmers owed to Walker in connection therewith.   The trust deed was not recorded until October 29 or 30, 1919.   On the same day or the next Walker made his will, in which he bequeathed to his nieces, Mrs. Rimmer and Mrs. Atchley, $4,000 each of the proceeds of this note, and nominated Dr. Atchley as the executor of his estate.   Walker died in July, 1920, and on August 11th following, his will was probated, and Dr. Atchley qualified as executor.   Shortly thereafter and after ascertaining that Mrs. Rimmer had the $8,000 note, and claimed its ownership by gift from Walker in his lifetime, and upon her refusal to turn it over to him as part of the assets of the estate, Dr. Atchley brought this bill in this case to recover the note, and to have it decreed to belong to the estate for distribution under the will. Mrs. Rimmer resisted the bill by answer, setting up that Walker had given the note to her.   The chancellor decreed in favor of Mrs. Rimmer's claim, and dismissed the com plainant's bill.   The court of civil appeals reversed the chancellor, holding that Mrs. Rimmer had failed to make out her claim, and decreed that complainant was the legal

Atchley v. Rimmer.

owner of the note. On petition for *certiorari* this court affirmed the court of civil appeals. A very earnest and proper petition for rehearing was presented, and the case has been argued at the bar.

The complainant made out a *prima-facie* case by the introduction of the will, its probate, and his qualification as executor. Under the will Walker was the owner of the note in question, and specifically made disposition of the proceeds thereof, and named Dr. Atchley as the executor. Nothing else appearing, the complainant was entitled to the possession and ownership of this note, and, unless Mrs. Rimmer has made out her claim as a gift from Walker *inter vivos,* the action of the court of civil appeals must be affirmed.

Counsel for Mrs. Rimmer, realizing that, in order to make out the gift, it was necessary to show both an intention upon the part of Walker to transfer the title of the note and actual delivery of the same by clear, ample, and convincing evidence, contend that this has been accomplished:

(1) By presumption of delivery of gift from the fact of Mrs. Rimmer having possession of the note; (2) by the testimony of Mrs. Rimmer herself that Walker in person delivered the note to her with the statement "This is yours;" (3) by declarations of the donor made to witnesses after the gift that he had given and delivered the note to Mrs. Rimmer.

These contentions we shall now consider in connection with the reasons urged against them.

1. "Possession itself is presumptive evidence of ownership." This proposition of the defendant is rested principally upon a sentence found in the opinion of Mr. Jus-

tice BARTON of the court of chancery appeals in the case
of *Mason* v. *Willhite* (Tenn. Ch. App.), 61 S. W., 298.
There was involved in that case a gift of notes by a mother
to her daughter. The sentence in the opinion relied upon
here is found in a paragraph which reads:

"After a careful. study of the evidence in the case, we
have come to the conclusion that the evidence justifies the
finding of the chancellor that the notes were given to the
complainant. *In the first place, it is to be said that she
was found in possession of the notes at the time of her
mother's death, she having died in Arkansas; and posses-
sion itself is presumptive evidence of ownership.*"

The expression "possession itself is presumptive evi-
dence of ownership" was not strictly accurate, even under
the facts of that case, and certainly not so speaking in
the abstract. Its meaning in that case was that the pos-
session of the notes by the claimant under the circum-
stances was sufficient evidence of ownership. To say that
mere possession proves a *prima-facie* case of ownership is
to substitute presumption where proof is required. In-
deed, possession may under some circumstances afford
a presumption against ownership; for example, the pos-
session of stolen goods makes a *prima-facie* case of lar-
ceny against the possessor. Possession may or may not
afford evidence of ownership; certainly a presumption
of ownership does not arise in the absence of facts and
circumstances tending to show that it resulted from trans-
fer of title. The circumstances in *Mason* v. *Willhite* were
such that the claimant's possession could only have been
obtained by delivery from the donor under conditions in-
dicating an intentional transfer of the title. That mere
possession of promissory notes does not create a pre-

sumption of ownership is illustrated, and was so held by this court in *Allen* v. *Hays*, 139 Tenn., 56, 201 S. W., 135. In that case one of the executors had collected a note which belonged to the deceased, and he declined to distribute among the distributees of the estate, because of his claim that the testator had made a gift thereof to his son. A contention was made that the possession of the fund raised a presumption of ownership. This contention the court denied, and in doing so quoted with approval the principles announced in cases arising in other states, to this effect:

"Title is presumed to continue until it is shown to have been divested, and we take it to be the rule that the mere possession of such paper, without indorsement, where there is no evidence of a consideration paid, and no evidence of delivery except possession, is an insufficient showing of the passing of title of the defendant. . . . The mere possession of a negotiable promissory note or any negotiable instrument, the title to which passes under the law merchant by indorsement and delivery, is not *prima-facie* evidence of ownership as against the payee. The absence of the *indicia* of ownership is wanting, and mere possession does not supply this." *Roy* v. *Duff*, 170 Iowa, 319, 152 N. W., 606.

Also from *Gano* v. *McCarthy*, 79 Ky., 409, as follows: "The mere fact of possession, upon such a state of facts, was not *prima-facie* evidence of ownership. There might have been such a gift of the note, or a verbal sale of it, by the intestate to his niece, as to prevent a recovery by his personal representative, is not doubted; but such a defense must be sustained by the proof, and the law will not presume the existence of such facts from the mere

possession of the note by the claimant as will deprive the owner of [his] title. The presumption is that title and right of possession is with the original owner, and the burden is on the claimant to show that his possessions is rightful. . . . It would be an easy matter to deprive the owner of his property, if in such a case he were required not only to make his action good by showing title in himself, but must, in some other manner than the exhibition of his title, negative the idea that the possession of the defendant is wrongful."

The reason of the rule is still stronger in a case where there was opportunity for the claimant to come into possession of the note, especially during the last illness of the alleged donor. The application of this rule, it was said, did not necessarily impute wrong to the possessor, the purpose being to preserve property rights in cases where opportunity is afforded for obtaining wrong possession where a dead person is involved.

From these reasons we conclude that no presumption arises from possession of this note by Mrs. Rimmer after the death of Walker to aid her in making out the truthfulness of her claim.

Since, however, the fact of possession is a matter to be considered along with other facts and circumstances, we must determine what effect the possession of the note by Mrs. Rimmer shall have in this case. Walker lived in the same home with the defendant; he kept some of his belongings, at least, in his room. There were some valuable papers found in a satchel in his room. It appears that Walker had some valuable papers in a bank in Oklahoma where he had lived and transacted business, but

there is no satisfactory evidence that this particular pa-
per was ever kept there.   It also appears that he kept
some papers in the vault of the Jefferson City bank, and
Mrs. Rimmer says that he had been to Jefferson City on
the day upon which he gave this note to her.   Thus it is
shown that Walker did have the note and deed of trust
in his possession and in the home of Mrs. Rimmer in May
before his death.   He was sick for some time prior to his
death, during which time, and subsequent thereto, Mrs.
Rimmer had ample opportunity to get possession of the
note.   The fact that she never exercised any act of own-
ership or asserted any claim for said note prior to Walk-
er's death, and that, when she was called upon by the
executor for his papers and any property that belonged
to him, although she knew the note or its proceeds had
been disposed of by Walker's will, she then made no claim
to it, and, when she was specifically called on to give in-
formation about it, she continued to be silent, certainly
does not tend to strengthen her claim to its rightful pos-
session.

This state of facts is not convincing that Mrs. Rimmer
came into the possession of this note by reason of its hav-
ing been delivered as a gift to her.   The rule seems to
have universal approval by the courts that the fact that
a person, claiming property as a gift, has it in his pos-
session after the death of the alleged donor, has little, if
any, weight, where the claimant has had access to the
property and effects of his alleged donor during his last
sickness or after his death, or where its possession can
be reasonably accounted for in any other way.   Numerous
cases in support of this rule might be cited.   *Maxler* v.
*Hawk,* 233 Pa., 316, 82 Atl., 251, Ann. Cas., 1913B, 559;

*Chambers* v. *McCreery*, 106 Fed., 364, 45 C. C. A., 322.
To establish a gift there must be evidence free from personal interest and not equivocal in character that the property claimed was delivered to donee during the donor's life, and this rule is not met by the possession of the property, where the possessor has had an opportunity to acquire the possession by other means. In order for this rule to obtain, it is not necessary that the court should be able to say that the act of the possessor was improper or dishonest, but for reasons of public policy the proof must show the possession was obtained by delivery with an intention to give.

2. Of course, if we accept in full the testimony of Mrs. Rimmer on this subject, her possession of the note is satisfactorily accounted for. Indeed, the fact of possession would be wholly unnecessary in that event, because she does testify that Walker actually delivered the note to her and made her a complete gift of the same. This raises the question of how far, if at all, the court can accept her testimony on this subject. The *quantum* of proof required by the rule precludes the acceptance of the testimony of the donee alone, unsupported by facts and circumstances or other corroborative evidence. We have concluded that she cannot be corroborated by her possession of the note under the circumstances existing. The very reason of the rule which requires the proof to be ample, clear, and convincing because of the opportunity afforded in cases of this sort for fraud, and the facility with which after the death of the donor fraudulent claims of ownership may be founded upon pretended gifts made during the lifetime of the donor, precludes the acceptance by the court of the statements of interested parties alone to es-

tablish the gift. We conclude, therefore, that there must be other testimony than that of the beneficiaries of the gift to establish it.

Moreover, Mrs. Rimmer was not a competent witness to testify in regard to transactions and conversations with the deceased under the provision of our Code, to-wit:

"In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or [any] statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party." Shannon's Code, section 5598.

The only suggestion made by counsel for the defendant is that this statute does not apply, because the executor in this case is but a nominal party. This contention is based upon the interpretation of the will that the note in controversy was bequeathed directly to Mrs. Rimmer and Mrs. Atchley, and that the executor had nothing to do with the matter more than to deliver the property over to them; therefore that the real controversy is between the two sisters who are the beneficiaries of the note. This contention is not supported by the will itself. By item 4 of the will the complainant is appointed as executor, the language thereof being:

"I hereby nominate and appoint Dr. W. P. Atchley, of Knoxville, Tenn., executor of this will."

The second item of the will bequeaths to Mrs. Rimmer $4,000 of the note, and to Mrs. Atchley $4,000 of the note, concluding the bequest with this language:

"And it is my intention to bequeath each of my said nieces mentioned above the amount mentioned above out

of the proceeds of said note; and if there should be any interest due on said note at the time of my death, I desire the same to be equally divided between my two said above mentioned nieces, same to be in addition to the sums bequeathed them, as aforesaid."

Even though it may be certain that the proceeds of this note were not necessary to be used by the executor in payment of indebtedness, and even though he may have been able to distribute the proceeds of the note by transferring it to the beneficiaries thereof, nevertheless the will made it his duty to take charge of the assets of the estate, and to distribute the proceeds of this particular note to the beneficiaries named. Clearly, if judgment had been rendered in favor of Mrs. Rimmer, the estate to be administered would have been reduced to the extent of the amount of the note, and she would have been the better off to the extent of $4,000. The purpose of the statute was the protection of estates against the testimony of interested parties as to transactions and conversations by the dead. The statute operates to render witnesses incompetent where the proposed witness must be a party to the suit, in such way that judgment may be rendered for or against him, and the subject-matter of the testimony is a transaction with or statement by the testator. The case of *Gibson* v. *Buis,* 142 Tenn., 133, 218 S. W., 220, is cited by the defendant in support of her contention. It rather supports the contrary. In that case suit was brought by M. W. Gibson, executor of the estate of E. J. Gibson, against his sister, Mrs. Buis, seeking to charge her with a check of $1,000, which the testator had issued in favor of her husband as a loan. Her contention was that, although this check originally represented a loan to her

husband, after it was issued, her father had made a gift of it to her, and she so testified. It was held that her testimony fell within the prohibition of the statute; that, while it was admissible to the extent of contradicting the testimony of her brother as to the conversation between them, it was incompetent as substantive testimony of the gift. On this question the court said:

"Referring to the contention made on behalf of Mrs. Buis that her testimony was competent, because the complainant undertook to bind her by alleged admissions, she could narrate "the conversation in its entirety."

"In the first place, the complainant does not testify as to any damaging admissions made by his sister. He testified that she told him that her father gave her his indebtedness. In any event, we think her testimony was only competent to the extent of showing that in this conversation she claimed the thousand dollar indebtedness was given to her, and that it was not competent to prove the gift. It was competent to rebut the testimony of her brother as to admissions made by her, but was not competent as substantive testimony of the gift."

The court approved the syllabus in the Michigan case of *Harris* v. *Cable*, 113 Mich., 192, 71 N. W., 531, as follows: "On an issue whether a note was given by testator to defendant, his housekeeper, evidence that when defendant produced the note, at a legatee's request, she said that it was hers by gift, is admissible to rebut an inference against her ownership of the note from the circumstances of the production of it, though incompetent as evidence of the gift."

And on page 195 of 113 Mich., on page 532 of 71 N. W., the court said: "Miss Cable was allowed to testify that,

when she produced the note at the plaintiff's request, she accompanied it with the statement that it was hers by gift from the testator. This was not admissible as substantive evidence of the gift, but it was admissible in its tendency to rebut the inference of an admission against her ownership sought to be drawn from the production of the note under the circumstances shown."

And in *Campbell* v. *Sech,* supra, on page 637 of 155 Mich., on page 923 of 119 N. W., the court said: "Defendant Nettie testified in her own behalf, and was shown by her counsel the bank book of the defendant bank, showing the item of $838.60, and asked: "That is yours, is it? A. Yes, sir.' She further testified that she told Mrs. Sahms, her sister, that her father had given her the $800. She also introduced evidence of statements made by her to other persons that he had given her $800. Nettie was entitled to deny the conversations as to her admissions, and to state what the conversations were. She also was entitled to show that she claimed the money as hers. These statements, however, were not admissible as substantive evidence of the gift, but to repel the inference of an admission against her ownership."

*Gibson* v. *Parkey,* 142 Tenn., 99, 218 S. W., 220, is to the same effect. In that case Mrs. Parkey claimed a gift from her father of a note of $1,200 on her husband. It was held that she was not competent to testify as to statements made by her father to the effect that he had made her a gift of the note, although she was competent to testify in behalf of her husband that he paid the note, and her husband was competent to testify in her behalf respecting the gift. It is true that the fact does not appear

in the report of the cases just referred to as to whether the executor himself would have been affected by the testimony, aside from his capacity as executor. This makes no difference, since the prohibition of the statute, is in case a judgment might be rendered for or against either of the parties, and, as ,we have said, the executor in this case was not a mere nominal party. In order to carry out the provisions of the will, the acquirement of the assets of the estate was proper, if not necessary, his failure to do which would have rendered him liable for failure to perform the trust interposed. Bequests are as much obligations of the estate as debts owed by the testator.

Other cases cited do not support the defendant's contention here. In *Turner* v. *Huggins,* 130 Tenn., 181, 169 S. W., 754, Ann. Cas., 1916B, 566, the rule was held not to apply to suits brought by surviving partners. The court held that by the very terms of the statute a party was only rendered incompetent to testify against executors, administrators, and guardians, and the real parties in that case were not the executors, but the surviving partners, and the mere fact that the executor was named as a party did not prevent the witness from being competent to testify, for the suit affected only the surviving partners and not the executor of one of them.

*Hale* v. *Kearly,* 8 Baxt., 49, is not contrary to the rule announced. That suit was brought by the widow, but in the name of the administrator, under the provision of section 2292 of the Code (Shannon's section 4026) to recover against the defendant for unlawfully killing. her husband. She was a witness to the killing, and testified in regard thereto. It was held that the suit was only

nominally in the name of the administrator; his estate had no interest in it; really it was the suit of the widow and her infant child; therefore the defendant could testify as to the circumstances of the killing. *Johnson* v. *Patterson* is not in point against it to answer to the matter in favor of the estate. No decree was sought against any one in favor of the estate, but the question was simply a settlement among the heirs.

We are of the opinion that the statute disqualifies Mrs. Rimmer from testifying as to transactions between her and the deceased donor.

3. The rules of law which we have accepted, as above stated, leaves the defendant's case to stand alone upon the testimony of witnesses as to declarations made by the alleged donor in his lifetime.

John Rimmer, husband of the defendant Nell Rimmer, and one of the makers of the $8,000 note, says that in May following the execution of the note in August and preceding Walker's death in July, Walker told him that he had given the note to Mrs. Rimmer. He is corroborated in this statement by a witness named Waycaster. W. W. Rimmer, a brother of John Rimmer, says that about the first of May, 1920, George Walker told him that he had given the note to Mrs. Rimmer. Shade Rimmer, another brother, and one of the makers of the note, says that, in a conversation with Walker in May, 1920, Walker told him that he had given the note to Mrs. Rimmer, and that he (the witness) would have to go to her for settlement. A man by the name of Zirkle, disinterested, says in a conversation with Walker about the last of April or the first of May, 1920, Mr. Walker told him that he had given this $8,000 note to Mrs. Rimmer.

Upon this testimony two questions are presented: In the first place, it is contended by the complainant that the mere declaration of gift is not sufficient to prove delivery of the property given. Unquestionably actual delivery of the note would be essential to complete the gift. Of course delivery must be either actual or constructive. In this case there is no room for constructive delivery; the note was either actually delivered or not delivered at all. Of course delivery alone does not constitute a gift, but a gift cannot be completed and made irrevocable without delivery. Delivery and intention to give must accompany each other to made a valid gift. We have, therefore, t'.e question of whether or not it is necessary for the claimant to prove delivery by other means than the mere declarations of the donor that he had made a gift. There is considerable conflict in the authorities upon this question. One line of cases holds that bare declarations are not sufficient, but there must be some act or circumstance from which an inference of delivery may be made. The other line of cases holds that declarations of gifts are sufficient to prove delivery, or are sufficient to afford an inference of delivery. It is easy to see how the decisions might be influenced in favor of the latter rule where the declaration itself was to the effect, not only that the property had been given, but that the property had actually been delivered and the gift completed. It is claimed by counsel for the defendant in this case that such is the state of facts here, and the testimony of John Rimmer is relied upon to sustain that contention. In the brief of the defendant it is stated: "Walker told the witness in that conversation that his wife then had the note." We fail to find such statement in the testimony of the witness.

The witness says that he had asked Mr. Walker if he had indorsed the note over to Nell, and to that Walker replied, "No;" that he considered the note good, and if he did that he himself would be responsible for the payment of it. We think it cannot be inferred from this that Walker declared he had surrendered possession by delivery of the note to Mrs. Rimmer. It seems to us that the declarations of the alleged donor, that not only had he given the note, but had actually delivered it, would be evidence to be considered upon the issue of fact as to whether or not the note had been actually delivered, but the testimony does not bring the case within that rule. We have present declarations by the alleged donor only that he had given the note to Mrs. Rimmer, and, unless it can be inferred from that statement that actual delivery had been made, there is no competent proof of its delivery to her. The reason given in the cases for holding a declaration to the effect that a person had given property justifies the inference of actual delivery is that, inasmuch as there can be no complete and legal gift without delivery, the very use of the term "gift," or "I have given" may be intended to include delivery, and therefore it is the province of the jury or an issue of fact to be determined by the court as to whether or not all the elements essential to the gift were embraced in the declarations, and therefore it is said:

"It ought not to be laid down as a rule of law to govern the jury that such declarations in themselves are insufficient to prove the gift." *Davis* v. *Davis*, 1 Nott & McC. (S. C.), 225.

The reason assigned for the other rule is that of the common law, when applied to the *quantum* of proof in a

case of this sort, and that is the ease and facility with which the property of dead men can be transferred to those not entitled to it; the opportunity for the perpetration of fraud justifies the public policy demanding the strict rule, it being assumed that the great majority of honest claims can be established without having to resort to this character of evidence, and thereby be practically sure that no injustice be done by the adoption of that rule, whereas very few dishonest claims could be defeated, if left open to be established by bare declarations of a gift which did not relate the facts and circumstances making up a legal gift; that it is better to require strict proof of actual delivery or some act or circumstance amounting to an actual delivery rather than attribute delivery to a declaration of gift. The rule is stated in *Ridden* v. *Thrall*, 125 N. Y., 572, 26 N. E., 627, 11 L. R. A., 684, 21 Am. St. Rep., 758, in dealing with gifts *causa mortis* in these words:

Public "policy requires that the laws regulating gifts *causa mortis* should not be extended, and that the range of such gifts should not be enlarged."

In *Keepers* v. *Fidelity Title & D. Co.*, 56 N. J. Law, 302, 28 Atl., 585, 23 L. R. A., 184, 44 Am. St. Rep., 397, the court said:

"When it is remembered that these gifts come into question only after death has closed the lips of the donor; that there is no legal limit to the amount which may be disposed of by means of them; that millions of dollars' worth of property are locked up in vaults, the keys of which are carried in the owners' pockets; and that, under the rule applied in those cases, such wealth may be transferred from the dying owner to his attendant, provided the lat-

ter will take the key and swear that it was delivered to him by the deceased for the purpose of giving him the contents of the vault, the dangerous character of the rule becomes conspicuous. Around every other disposition of the property of the dead the legislative power has thrown safeguards against fraud and perjury. Around this mode the requirement of actual delivery is the only substantial protection, and the courts should not weaken it by permitting the substitution of convenient and easily-proven devices." *Fouts* v. *Nance,* 55 Okl., 266, 155 Pac., 610, L. R. A., 1916E, 283.

The same reason, of course, applies to gifts *inter vivos* as to gifts *causa mortis,* for the reason that delivery is required in each kind of case, and the same dangers obtain.

In the case of *Chamber* v. *McCreery,* 106 Fed., 364, 45 C. C. A., 322, in dealing with this identical question the court said:

"The declarations of Prince that he had given the bonds in the box to his wife will not aid her in her claim to them, unless they are accompanied with the proof of such actual delivery as divested him of his title to them, and would have rendered it impossible for him to have again exercised control over them. *Ewing* v. *Ewing,* 2 Leigh, 337; *Liebe* v. *Battmann,* 33 Or., 241, 54 Pac., 179, 72 Am. St. Rep., 705. It is now well settled that the declarations of a donor that he had given the property in controversy to the claimant thereof will not perfect a gift incomplete for want of actual delivery, and the fact of delivery must be shown by other evidence than the mere declaration of the donor. *Rockwood* v. *Wiggin,* 16 Gray, 402; *Yancy* v. *Field,* 85 Va., 756, 8 S. E., 721. A number of the author-

ities we have cited refer to cases *causa mortis,* but they are nevertheless applicable; for, so far as the question of delivery is concerned, there is no difference between gifts of that character and gifts *inter vivos,* as actual delivery is absolutely essential in both cases."

Even in those cases in which the proof of alleged gift upon the declarations of the alleged donor alone is held sufficient, the declarations proven included a statement of facts from which it might reasonably be inferred that the donor had made actual delivery; the declarations were more than mere statements of the donor that he had made the gift, but facts were stated indicating actual delivery. We believe the better rule, the one sustained by reasons of public policy and the greater weight of the authorities is that the fact of delivery must be shown by other evidence than the mere declaration of the donor, when the declaration can go no further than to express a gift, and it does not either distinctly state a delivery or facts from which actual delivery may be inferred. Any other rule would be dangerous in its tendency making easy the commission of fraud, create a temptation for defeating the will of the dead, and open the door to perjury. The chance of a just claim being defeated thereby is inconsequential when compared with the injustice which might result from a relaxation of the rule.

To these reasons may be added that one making statements or declarations is not always clear in his meaning, and this is especially true when the statement relied upon was a mere incident in a conversation relating to other subjects. The witness may not have understood clearly just what was said. The law looks upon the repetition of statements of this sort with very great care and cau-

tion in any kind of a case, and, when the statements are depended upon to carry conclusions of law, as well of fact, as in a case of this kind, the statements attributed to the donor must include statements of all the facts necessary to constitute the conclusion.

There is ample reason in this case for hesitating to accept them as being of that character by which the donor would expect to be bound. Take the testimony of Mr. Zirkle, wherein he says that Walker said in his presence in a conversation that he had given this note to Nell. We find that this same witness had a conversation with Mr. Walker on the date the note was executed, or before there was any claim by Mrs. Rimmer that the note had been given to her. In that conversation Zirkle says that Mr. Walker told him he did not care anything about any security to the note, because he expected to give the note to Mrs. Rimmer. We find that, in a very short time after that conversation, and on the very day or the next upon which he registered the deed of trust, Walker made his will, by which he bequeathed one-half of the proceeds of this note to Mrs. Rimmer and the other half to Mrs. Atchley. We can well understand how that Mr. Walker, having this in mind, might make a statement which the witness would understand as referring to Mrs. Rimmer being given the whole note. So with the conversations related by the other witnesses. Walker, having provided by his will for the disposition of this note or the proceeds thereof to his nieces, one of them being Mrs. Rimmer, might have had in mind when making the statement that provision in his will, rather than the absolute gift of the note to Mrs. Rimmer. In this way only can his statement be reconciled with the solemn declaration shown in his

will, which was permitted to stand without modification. The case is one fairly illustrating the correctness of the rule requiring strict proof. Here we have a motive for a false claim, in that the claimant is the wife of one of the makers of the note. The chief witnesses in her behalf are her husband and her husband's brother, who is another one of the makers of the note. We have easy opportunity presented to Mrs. Rimmer to come into possession of the note either during the late sickness or after the death of the donor. We have the circumstance that Mrs. Rimmer in no way made any statement to anybody about the gift having been made to her until some little time after Walker's death; we have the circumstance that when she was called upon to speak on this question she remained silent, as she claims, upon the advice of her attorney. The evidence of herself and witnesses are not altogether harmonious. In relating the occasion of the gift to her, she said that her uncle came into the room and gave her the note and the deed of trust, and later in her testimony she says the note was given to her, and the deed of trust to her husband. One of the witnesses testified that, in a conversation which he had with Walker, Walker said he had given the note to Nell and John.

We do not say there was actual fraud committed by the defendant, nor that there was any actual intention on her part to set up a wrongful claim, but we do hold that the facts and circumstances of the case are such that all the rules of law heretofore stated are applicable, and that the defendant has failed to meet the requirements of the law, and that her claim is not established. Therefore we are content with the conclusion heretofore reached, and the petition to rehear will be denied.