NEBRASKA WESLEYAN UNIVERSITY, APPELLANT, V. WILLIAM THOMPSON ET AL., APPELLEES.

FILED DECEMBER 9. 1927. No. 24976.

*Stewart, Perry, Stewart & Van Pelt,* for appellant.

*Clark Jeary, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This case was heard before the commission, and reargument ordered before the court.

Action to foreclose, a mortgage on real estate. March 4, 1919, William Thompson and Mary I. Thompson, husband and wife, executed and delivered the note and mortgage in question to Martin Burns to secure remainder of purchase money of lot described therein. March 1, 1922, when it became due, an extension agreement with interest coupons attached, for three years, was duly executed, interest payable March 1 and September 1, each year. Martin Burns died testate July 5, 1922, and willed 7-20 of his estate to plaintiff. Pursuant to order of county court, June 19, 1923, the mortgage and June 27, 1923, the extension agreement were assigned to plaintiff, which took them at their face value as part of the residuary estate under the will. When suit was commenced the original note and mortgage were lost and suit brought accordingly. Upon the trial the mortgage, abstract and insurance policy were produced by defendants. The note is still lost. Defendants admit the execution of the mortgage, note and extension, but allege that immediately after the execution of the extension agreement the mortgagee, Martin Burns, orally forgave the debt and delivered the note and mortgage to defendants, reserving only the interest thereon during his life, which presents the only contested question. Plaintiff replied denying the gift and setting up an estoppel *in pais*. Decree for defendants establishing the gift, quieting their title as against the mortgage, and plaintiff appeals.

Grounds urged for reversal are: (1) Error in permitting Mary I. Thompson to testify concerning a conversation and transaction with Martin Burns, since deceased; (2) error in holding defendants not estopped; (3) evidence insufficient to support decree.

We need not discuss the first assignment in view of our conclusion upon the other two.

The burden is upon defendants to prove the fact of the gift; and in this class of cases the evidence must be clear and convincing, especially, as appears, when such claim is not made until after death of the donor and after suit brought. 28 C. J. 676, sec. 82, 680, sec. 85.

William Thompson being clearly incompetent under section 8836, Comp. St. 1922, to testify as to the transaction with Martin Burns, since deceased, the only witness as to the gift was Mary. Her evidence in substance is that after the execution of the extension agreement, and as she and her husband were about to depart, Burns called them back, and as she was sitting in a chair at the foot and her husband on the side of the bed in which Burns was sitting up (being bedridden), no one else being present, Burns said, "I have no children and no relatives, and I want to do something for you," and handed him the papers. He said, "I am giving those to you, and I want the interest as long as I live, and when I am through the principal is yours. * * * Don't show them to any one or give them to no one."

The circumstances relied upon as sustaining the gift are: The possession by defendant Thompson of the mortgage, abstract and insurance policy (the note was not produced nor its absence accounted for, though the answer alleged its delivery with the other papers and possession in defendants) ; the failure to show any opportunity for defendants to obtain possession of the documents except as claimed; the close friendship between donor and defendants and sympathy of donor for William Thompson, who was nearly blind and had been so for some years; the non-existence of close relatives of the donor, who might naturally be recipients of his bounty.

As affording contrary inferences, the following facts appear: The business of the Thompson family was conducted by Mary and two sons, George and Verne, on account of William's failing sight, and their conduct with relation to the transaction is binding upon William; the interest falling due September 1, 1922, two months after Burn's death, was paid by George with a check signed by and from the bank account of Mary; George says he paid by his own check on his account at the University Place Bank; the bank records show no such check, but do show one signed Mrs. William Thompson and charged to her

account for $63, the amount of the interest coupon upon the date of the payment; interest due March 1, 1923, was paid by Verne, who says he was reimbursed by his father and mother; the family bank account was kept in the name of Mary. Witness Ripley, representative of Lincoln Trust Company, executor of the will, prior to the transfer to plaintiff, had several conversations with Verne (being referred to him by both William and Mary as attending to the business), looking toward the execution of a new note and mortgage in lieu of that which was lost, and not one of them suggested that there was any defense to the debt, nor that William had possession of the mortgage. April 3, 1923, the trust company wrote William inclosing new note and mortgage for signature, and April 16 inclosed canceled coupon due March 1, paid the 8th, and inquiring about new note, and May 5 asking about new note, saying the extension agreement alone could not be handled. No response was made to these letters.

Speaking of a conversation with Ripley, Mary testified: "I was over at my son's when he came. It was when he had the coupon, after he sent several letters and wanted us to make a new mortgage and brought the coupon, and he said, 'I am going to hand this to Wesleyan,' and I said, 'Well, we have always paid our debts, and if you hold that we will pay it—if we owe it we will pay it,' and that was all I said."

George W. Isham, treasurer of the endowment fund of plaintiff, testified that when he demanded payment of interest due September 1, 1923, Verne Thompson said they did not have the money, but would pay it when they sold some crops near McCook. Verne admitted seeing Isham, and at first denied telling him anything except passing the time of day, but finally said he did not remember—said he first learned of the gift in March, 1923—made no mention of it to Isham.

G. A. Knight, a disinterested witness, who drew the extension agreement testified that at that time none of the papers connected with this claim could be found in the tin

box where Burns kept his papers, nor elsewhere, though search was made, and that he had to call the register of deeds' office to get the date and place of record of the mortgage; while Mary testified that the papers were there all the time. Mary testified that she did not know the interest had been paid September, 1922, though it had been paid by a check signed by her on her account; denied ever drawing such a check or having destroyed it, because she did not have any to destroy; denied all knowledge of the payment in March, 1923. Her answers to questions on cross-examination were for the most part evasive and contradictory. The only excuse offered for failure to divulge the fact of the gift was that Burns told them not to; but, surely, after Burns' death the reason, if any, for caution had disappeared. The possession by defendants of the mortgage, abstract and insurance policy is unexplained, except by the testimony of Mary, and that of William, who says he got it when extension agreement was signed. The note was not given them, and they both say they never saw an $1,800 note. Knight says the note and mortgage were not there and he had to telephone to the register of deeds, as above stated. William says Knight asked for and got all the papers and left them on the table close by the bed. This was stricken out by the court.

While the fact of possession is important, we do not think it a circumstance entitled to much weight in view of the evasive character of the testimony of defendants. Furthermore, the note itself, to which the mortgage was a mere incident, was not delivered to defendants, so that the weight of any presumption arising from mere possession is very much weakened, if not quite demolished. An interesting discussion of the presumption of ownership arising from mere possession, in a very similar case, is found in *Atchley v. Rimmer,* 148 Tenn. 303. As to the close friendship between Burns and William, the only evidence is from the latter, who said they were intimate friends, but no facts are presented tending to support this conclusion. We think the evidence lacks that clear and convinc-

ing quality necessary to establish a forgiveness of the debt. The silence of defendants and their agents upon that subject, when, if their claim was true, it would be the most natural thing for them to speak, continued until after suit brought; the payment of two interest coupons, six months apart, after the death of Burns, without protest as to their liability; the fact that Mary contradicts the bank records on a most material point, and her evidence is evasive and contradictory in itself and at variance with the testimony of every witness for plaintiff, whether interested or not, all lead us to the conclusion that there was no forgiveness of the debt as claimed.

It further appears from the evidence that, in order to close the estate, the executor persuaded plaintiff to accept the extension agreement as cash, telling Isham of the several conversations with defendants and their family in which no denial of the debt was made, and that plaintiff accepted the instrument relying upon the information so obtained as part of its legacy under the will. The estate has been closed and distribution made to the other legatees. We think a clear case of estoppel is made out. Defendants cite *Onn Lumber & Shingle Co. v. Powell Lumber Co.*, 94 Neb. 267, to the effect that it must appear that the declarations or acts on which the estoppel is based were made with the express intention to deceive, or with such carelessness as to amount to a constructive fraud. The evidence fully complies with at least the last condition. Defendants were informed that the agreement was to be turned over to plaintiff, and must have known that the latter would be deceived unless informed of defendants' claim, and must have contemplated that their acts would be communicated to any one dealing with the paper. The fact that plaintiff might recoup its loss from the other legatees in case the gift is established cannot be considered upon that question, nor prevent the operation of the estoppel.

The decree of the district court is not sustained by sufficient evidence, and defendants are estopped from claiming

a forgiveness of the debt. The decree is therefore reversed and the cause remanded, with directions to enter a decree of foreclosure as prayed.

REVERSED.