Opinion of the court delivered by
Judge Catron.
Jas. W. Glasgow sold Peck a negro boy, bequeathed by Jas. Glasgow, Sen’r. to his daughter Clarinda: James W. was the executor.
After Jas. Glasgow’s death in the last of 1819, or early in 1820, the executor represented the boy as his sister’s property, and that the hire belonged to her; but at this time he had not qualified as executor of his father’s will, which he did at April sessions 1820 of the Davidson county court.
The first question is, will an assent of an executor, in this State, before he qualifies and gives bond and security, vest a specific legacy? The act of 1715, ch. 48, sec. 4, prohibits executors from entering upon the administration of the assets, until they obtained letters testamentary, under a penalty of £50; and no letters shall be issued until after an oath be taken, for performing the will.— The act of 1794, ch. 1. sec. 47, 48, 49, prescribes the mode of proving wills and obtaining letters testamentary. The act of 1809, ch. 119, sec. 4, provides, that no executor shall presume to enter upon the administration of any estate whatever, before he enter into bond and security, as administrators are bound to do, unless the testator shall otherwise expressly provide in his will; and even in this case, either the creditors or distributees, may cause the executor to give bond and security, by petition; and on failure, cause him to be removed, and an administrator appointed with the will annexed.
It is believed before the executor qualifies, and gives bond and security, he can do no valid act. Suppose he were never to qualify, but proceed to deliver oyer to the *299 devisees the specific legacies, which included all the property of the testator, and thereby leave nothing to he administered? This would be contrary to the spirit and words of our acts of Assembly, and therefore void as against the administrator with the will annexed.
2d. By the acts of 1715, ch. 48, sec. 7, and 1789, ch. 23, sec. 2, 3, before the executor delivers the legacies, (or the property to distributees, who are statutary legatees,) he shall take bond and security from the legatees, for the security of creditors, that should debts be recovered against the estate, or be made appear, they will pay the debts, or so much thereof as the value of the property received; upon which bond a sci. fa. may be run by the creditor.
*** If the, executor parts with the property without any bond and security having been taken, the evidence of assent going to defeat the creditor should be very conclusive ; nor can the English rules evidencing assent, to be inferred from slight expressions and circumstances, be adopted in this State without violating our acts of Assembly, and destroying the rights of- the creditor. See Toller 306.
From 1715 to 1789, the executor had one year to ascertain the debts, and settle them; this time was deemed too short, and the act of 1789 allows the executor two years, before he can be called upon to distribute; nor can execution issue, by the act of 1815, ch. 37, until twelve months after his qualification.
If the executor is bound by slight expressions, and the specific legacies vested, so that any sale made by him is void, then, within the year, or before the will is proven and he qualified, all the property may be parted with, though still in his possession, and subject to his-control, when creditors and purchasers will be’the subjects of the grossest imposition.
When Jas W. Glasgow said that Joe belonged to his sister, he referred no doubt to the specific bequest in his father’s will, without intending to deprive himself of the property as executor, or intending to defeat the creditors; *300 his conduct is conclusive that he so intended, because he hired the slave, then took him into possession and sold him; whether to pay debts, it was not'the business of the purchaser to enquire; the testator trusted the executor, he had the legal title, and power to sell, unless he had by assent to the specific legacy parted with it. The evidence of the expressions of Glasgow in Alabama, before he was appointed executor must be disregarded. This cuts off the entire proof of M’Clarin.
Mrs. Owen proves, that her brother Jas. W. Glasgow^ as executor of her father, hired the boy Joe to her husband Wm. P. Owen, which hiring was for the benefit of Clarinda, the plaintiff, and that she received it in part; that Joe in the spring of 1821 was taken from the posse^ sion of her husband by Jas. W. Glasgow; that she often, heard her brother Jas. W. say, the boy Joe was the property of Clarinda.
Jas. W. Glasgow hired the slave as executor, and controlled him as such, for he was not guardian for Clarinda; and his saying in the family that Joe belonged to his sister, was natural, when speaking in reference to his father’s will; but his acts to the world could only receive one construction, that the boy was holden by him as executor; if courts of justice were to permit proof of doubtful expressions, to defeat the sales of executors in cases of specific legacies, the executor all the while retaining the possession of the property, there would be no safety to purchasers.
Thos. Brown proves, that Glasgow offered to sell Joe to him a few days before he sold to defendant. Brown agreed to give the price asked, but went to John Brown, and gota note due the latter from Glasgow to make payment with; then Glasgow told Brown he was jesting, that the boy belonged to his sister. This was a mere evasion to escape from John Brown’s debt, and the circumstance could have had no weight with the jury.
The court below was asked to grant a new trial, because the jury found against evidence; it was refused, and the cause is brought to this court to reverse the opinion. *301 Unless the finding was plainly against the proof, we cannot order a new trial. We think the finding was right, and that the plaintiff Clarinda, and her husband, must proceed against the executor and his securities, if she has been injured. Judgment affirmed.