BENJAMIN J. HADLEY AND WIFE v. JAMES H. KEN-
DRICK.

EXECUTOR. *Sale of property of testator. Purchaser. Fraud.* If a person-
concerts with an executor, by obtaining testator's effects at a nominal
price, such fraudulent concert will make the seeming purchaser liable
for the full value of the property received. Fraud vitiates the trans-
action and the attempt to transfer the property is ineffectual and
void. But if there be no fraud on the part of the purchaser, his title
becomes complete and it is not incumbent on him to see that the
money paid was properly applied.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W.
F. COOPER, Ch.

J. TRIMBLE for complainants.

DEMOSS & MALONE for defendants.

GARNER, Sp. J., delivered the opinion of the court.

This is a bill filed by Benjamin J. Hadley and wife,
Mary M., against James H. Kendrick, in the Chan-
cery Court of Davidson county, seeking to recover the
value of certain gas stock with the dividends thereon.

Judge Catron died in May, 1865, leaving surviving
him, Mrs. Matilda Catron, his wife, and no children,
or the issue of such, and leaving a large real and
personal estate. His will was admitted to probate in
June, 1865, and the Hon. H. H. Harrison became the

sole executor, without bond, the will waiving security. The testator bequeathed to his man Henry $5,802.50 of stock in the Nashville Gas Light Company—$2,000 thereof to be paid to Henry—the balance to go to testator's widow during life, at her death to Henry; if he be dead, to his wife, Pauline, who may dispose of the same by will or gift, and in default of such disposition, said stock to go to her daughter, the complainant Mary M., absolutely.

The widow of Judge Catron dissented from the will, and in February, 1866, she settled with the executor as to her one-third of the personal estate of her deceased husband; and in part payment, the executor transferred to her forty-seven shares of said gas stock. In the lifetime of Henry, and on the 21st of March, 1866, about nine months after the executor's qualification, he sold and transferred to the defendant thirty-four and seventeen-twentieth shares of said stock. On the 1st of April, 1866, Henry died, having received the dividends on $2,000 of said stock accruing since the testator's death. On the 18th of July, 1872, Henry's wife, Pauline, died intestate, having made no disposition of the gas stock bequeathed to her. On the 25th of July, 1872, Mrs. Catron died. In 1873, complainant, Mary, then Robertson, filed her bill against Mrs. Catron and the executor of Judge Catron, and recovered from Mrs. Catron $12,528.04, being the value of the gas stock transferred to her and dividends thereon, which has been paid, and obtained a decree against the executor for some $9,000, the value of the gas stock sold to the defendant and dividends thereon,

which has not been paid—he having become insolvent. The complainant Mary, married complainant Benjamin, in 1873, and failing to collect said sum from the executor, the complainants filed this bill in 1877, eleven years after defendant Kendrick's purchase of the gas stock from the executor, and seek to recover from him the sum claimed, amounting at this time to some $12,000.

The bill charges that the executor had no right to sell said stock; that in so doing he was guilty of a *devastavit* and of fraud; and that defendant knew all about Judge Citron's will and the bequest to Henry, his wife and child, and was a participant in said *devastavit* and fraud; that defendant bought said stock for an inadequate price, and that he bought it at par value, when it was at a premium in the market.

The oath of the defendant to his answer is not waived. In his sworn answer the defendant avers that he paid, in cash, the market value to the executor when he bought said thirty-four and seventeen-twentieth shares of gas stock—paying the premiums at which it rated in the market at the time, and took the transfer thereof without any notice or suspicion of a *devastavit*, fraud, or irregularity of any kind, on the part of the executor.

The defendant avers that he sold said stock to other insolvent parties, and that he does not, and for years has not owned stock in said company.

He pleads the statute of limitation of six years, and that he was a *bona fide* purchaser for value without notice.

But one deposition is taken in the case. It is that of the defendant. In it he fully corroborates the averments of his answer, and proves that at the time of his purchase of said gas stock, that other stock in the Nashville Gas Light Company could have been bought for the price he paid to Judge Catron's executor for the stock in controversy in this cause.

He also testifies that his impression is, that at said time, the executor remarked that this would enable him to settle promptly the affairs of the estate.

The proof clearly shows that the defendant acted in good faith in the purchase of the gas stock from Judge Catron's executor; and that he paid an adequate price for the same in cash at the time, and that he was not cognizant of nor did he participate in any *devastavit* or fraud on the part of the executor, if any took place. There is no proof that the defendant was guilty of any concert or collusion with the executor in order to get said stock at an under value, or that he knew of, suspected, or connived at any misapplication of the proceeds of said purchase by the executor.

The proof makes out the case of an innocent purchaser, for value, without notice, on the part of the defendant in said transaction.

Personal property was, by the common law, considered of so little value, that no provision was made for its descent to the heirs at law of the owner. Indeed, up to 22 and 23, Charles II, the date of the passage of the statute of distributions, an administrator was entitled exclusively to enjoy the residue of the

Hadley v. Kendrick.

intestate's effects, after the payment of the debts and funeral expenses: 2 Williams on Executors, 906.

Mr. Williams, in his valuable Treatise on Executors, vol. 2, p. 998, says: "It is a general rule of law and equity, that an executor has an absolute power of disposal over the whole personal effects of his testator; and that they cannot be followed by creditors, much less by legatees, either general or specific, into the hands of the alienee. The principle is, that the executor, in many instances, *must* sell, in order to perform his duty in paying debts, etc., and no one would deal with an executor if liable afterwards to be called to an account. The power of the executor to dispose of a chattel specifically bequeathed, seems to have been formerly questioned, but succeeding cases, in modern times, have established it beyond dispute. Again, it is not incumbent on the purchaser or mortgagee of assets, to see the money properly applied, although he knew he was dealing with an executor. 'It is of great consequence,' said Lord Thurlow, in *Scott* v. *Tyler*, 'that no rule should be laid down here which may impede executors in their administration; or render their disposition of the testator's effects unsafe or uncertain to a purchaser. *His* title is complete by sale and delivery; *what becomes of the price is of no concern to him.*' Fraud and crime will vitiate any transaction. If, therefore, a man concerts with an executor, by obtaining the testator's effects at a nominal price, or at fraudulent undervalue, * * such concert will involve the seeming purchaser, and make him liable to the full value. Thus, where the person to whom the executor

34—VOL. 10.

collusively passes the property, knows that the executor is acting in violation of his trust, and in fraud of the persons interested in the administration of the assets, the fraud vitiates the transaction, and the attempt to transfer the property is ineffectual and void."

In *Sneed and Wife* v. *Hooper and Wife*, Cooke's Reports, 200, held that an executor may sell, give away, or dispose of, as he thinks proper, the goods and chattels of the testator; and that the legatees acquire no property in the goods and chattels of the defendants until the assent of the personal representative is given; they have only an inchoate right in the surplus after the payment of debts, which is only a right of action, the property remaining in the representative.

In *Martin and Wife* v. *Peck*, 2 Yer., 298, held that the executor has the legal title of personal chattels bequeathed, and power to sell the same unless he has, by assent to the specific legacy, parted with it, and the purchaser is not required to enquire into the object of the sale.

To this effect is the case of *Brown* v. *Bibb*, 2 Cold., 434, and various other cases decided by this court. We have already seen that the sale to the defendant was about nine months after the executor qualified, and about twenty-one months before he was required to settle his administration. Applying the well settled principles of law to the facts of this case, it is clear the complainants cannot recover.

On the hearing, the chancellor held that the equities set up in the bill, are denied in the answer, and not

sustained by the proof, and dismissed the bill with costs.

The decree will be affirmed, complainants will pay the costs of this court, and the costs of the chancery court will be paid as adjudged by the chancellor.