# FIRST NATIONAL BANK, Executor, v. MRS. WINNIE HOWARD.—302 S. W. (2d) 516.

Middle Section.   March 29, 1957.

Petition for Certiorari denied by Supreme Court June 7, 1957.

348

Frank Davenport, McMinnville, for First National Bank.

W. G. McDonough, McMinnville, for Mrs. Winnie Howard.

FELTS, J. This is a suit in replevin brought by the bank, as executor of Mrs. Carrie C. Martin, deceased, against Mrs. Winnie Howard for possession of a diamond brooch which is claimed by her as a gift *inter vivos* from Mrs. Martin and which was bequeathed in Mrs. Martin's will to Mrs. Kate Potter, who is not a party to this suit.

The Chancellor found against Mrs. Howard's claim and decreed possession of the brooch to complainant. She appealed and insists (1) that the Chancellor should have held complainant had no right to maintain replevin for this brooch; (2) that he should have sustained her right to it by gift *inter vivos;* and (3) that he erred in excluding certain evidence offered by her and in admitting certain evidence for complainant.

Mrs. Martin was a widow, childless, and 85 years of age at the time of her death. She died in June 1955, leaving a will which she had made in February 1953, and by which she appointed complainant her executor, provided for payment of her debts, and gave this brooch to Mrs. Kate Potter, one of her diamond rings to defendant Mrs. Howard, and other items of her personalty to other friends and relatives. The will was duly probated and complainant qualified and is acting as executor.

For the last four years of her life, Mrs. Martin was an invalid confined in a hospital in McMinnville. She left her valuables at the bank in charge of its President, Mr. Walling, for safekeeping. When she expected company and wished to ''dress up'', she would send defendant to the bank for her brooch and rings, wear them for the occasion, and then send them back to the bank. In October 1953, defendant came, asked for the brooch, and Mr. Walling delivered it to her, thinking Mrs. Martin had sent

for it to wear and would send it back. Defendant, however, did not return it but kept it until it was taken under this writ.

■ *First.* Replevin is a possessory action; it does not involve title but only the right to possession. Its common law scope has been broadened by our statute (T. C. A. sec. 23-2302) so that it lies ''in *all cases* where the plaintiff has a present right of possession of any personal property in the possession of the defendant''. (Italics ours.) Shaddon v. Knott, 32 Tenn. 358, 363, 58 Am. Dec. 63; Young v. Harris-Cortner Co., 152 Tenn. 34, 268 S. W. 1120; Duplicator Supply Co. v. Patterson, 197 Tenn. 157, 270 S. W. (2d) 467.

■ An executor or administrator succeeds to the decedent's personal property; that is, he takes the legal title in trust for the purpose of administration—to pay the debts and distribute the surplus to the legatees or distributees; and he has the right to maintain all such suits in equity and actions at law as may be necessary to reduce the property to possession. 2 Phillips' Pritchard on Wills (3d Ed.) Secs. 604, 644, 645, 659, 660, 666.

It is urged for defendant, however, that the title to this brooch either passed to her by gift *inter vivos* from Mrs. Martin, or passed directly to Mrs. Potter as a specific legacy under Mrs. Martin's will; that whether it did the one or the other is a controversy exclusively between defendant and Mrs. Potter; and that in no event could complainant executor have any interest in this brooch or any right to maintain replevin for it.

■ This overlooks the executor's right. As said before, the title to the testator's personal property vests in

the executor, upon his qualification, and he has the absolute right to possess and dispose of it. Neither legatees nor distributees have any right in the property until the executor's assent is given. Before such assent, they have only a right to call on him for the surplus after payment of the debts, which is merely a right of action against him, not a title or right to any specific property.

As said in Sneed v. Hooper, 3 Tenn. 202, 204; "Neither legatees nor distributees acquire any property in the goods of the decedent until the assent of the executor or the administrator is given. 3 Bac. Abr. (Gwil.) 84. They have only an inchoate right to the surplus after payment of the debts. It is only a right of action, the property still remaining in the executor or administrator". (Italics ours.)

In 2 Phillips' Pritchard on Wills (3d Ed.) sec. 488, it is said: "The assent of a qualified executor is necessary to complete the legal title of the legatee; and, on principle, he could not, without such assent, sustain his title in a suit for the recovery of the thing bequeathed from a person wrongfully in possession and withholding it."

While there are some authorities to the contrary in other jurisdictions (See Annotation, 150 A. L. R. 90), the rule above stated has long been well settled in this state. Sneed v. Hooper, supra; Brown v. Bibb, 42 Tenn. 434, 439; Martin v. Peck, 10 Tenn. 298; Hadley v. Kendrick, 78 Tenn. 525, 530; Union Planters National Bank & Trust Co. v. Beeler, 172 Tenn. 317, 320, 112 S. W. (2d) 11; 2 Phillips' Pritchard on Wills (3d Ed.) secs. 488, 604, 644-645.

■ This rule applies whether the legacy be general or specific. "The fact that a chattel is specifically bequeathed does not deprive the executor of the power to transfer or dispose of it in due course of administration, unless, by assenting to the legacy he has parted with the title and vested it in the specific legatee." 2 Phillips' Pritchard on Wills (3d Ed.) sec. 701; State ex rel. Franklin v. Sullivan, 176 Tenn. 107, 113, 138 S. W. (2d) 435, 437, 127 A. L. R. 1067.

It appears that complainant executor is in the course of administration of Mrs. Martin's estate. This suit was brought only about three months after her death. There is no showing in the record as to the condition of the estate—no showing that the brooch will not be needed for payment of debts; or that the executor has assented to the legacy of the brooch so as to part with title and vest it in the legatee, Mrs. Potter.

■ Inasmuch as the title and right to possession of Mrs. Martin's personal property vested in complainant upon its qualification as her executor, and since it is not shown to have divested itself of its title and right to this brooch, complainant is entitled to maintain this replevin and to recover the brooch, unless Mrs. Martin parted with her title to it by valid *inter vivos* gift of it to defendant Mrs. Howard.

■ *Second.* Mrs. Howard's claim of the brooch as a gift from Mrs. Martin is an affirmative defense and she has the burden of proving it. The essentials of a gift *inter vivos* are (1) an intention of the donor to give and (2) delivery of the subject of the gift. Both of these must be clearly proved, and the burden is on the donee. Doubts must be resolved against the gift. Pamplin v.

Satterfield, 196 Tenn. 297, 301, 265 S. W. (2d) 886, 888; Chandler v. Roddy, 163 Tenn. 338, 350, 43 S. W. (2d) 397, 400; Atchley v. Rimmer, 148 Tenn. 303, 255 S. W. 366, 30 A. L. R. 1481. American National Bank v. Robinson, 27 Tenn. App. 644, 653, 184 S. W. (2d) 393.

■ To make out the gift, Mrs. Howard took and read the depositions of herself, her daughter, Mrs. C. M. Clark, Jr., and Mrs. Robert S. Brady and Mrs. Irene McAfee Kirby.

Mrs. Howard testified that in October 1953, when she was in Mrs. Martin's room at the hospital, Mrs. Martin said to her: "A. She told me she wanted to give it [the brooch] to me and insisted that I go by and tell Smartt [Mr. Walling] to give me the pin". She further said that she went home that night and talked to her daughter, Mrs. Clark, and the latter's husband, Dr. Clark; that they said "they couldn't see anything wrong" in her accepting the brooch; and that she went next day and got it from Mr. Walling.

She further testified that the next night Dr. and Mrs. Clark talked to Judge Brady about it and he suggested that Mrs. Howard take a disinterested witness with her to the hospital to hear Mrs. Martin say she wanted Mrs. Howard to have the pin; that Mrs. Brady volunteered to go and went with Mrs. Howard next day to the hospital. Mrs. Howard testified that she said to Mrs. Martin, "I have brought Mrs. Brady over here to hear you say you wanted me to have the pin"; that while she could not recall exactly what Mrs. Martin said, "she said she did want me [Mrs. Howard] to have it".

Mrs. Brady testified that she went with Mrs. Howard to the hospital, saw Mrs. Martin; that Mrs. Howard mentioned the pin but she could not recall Mrs. Howard's exact words. She further said: "Q. Do you recall what Mrs. Martin said about it? A. Not exactly. Q. What was the sum and substance? A. The general impression I got was she wanted Mrs. Howard to have the pin".

Mrs. Kirby testified that she was at the hospital some time after Christmas 1953—two months or so after the date of the alleged gift—and Mrs. Martin said "she was giving a lot of things she had, her rings, beads and her pin. Q. Did she say to whom she was giving her diamond pin involved in this suit? A. Yes, she said she was giving it to Winnie Howard".

Mrs. Clark did not claim to have any first-hand knowledge as to the alleged gift, or to have ever heard any statement by Mrs. Martin about it. Most of Mrs. Clark's testimony detailed conversations of herself, her mother, and her husband at her home and a conversation of her and her husband with Judge and Mrs. Brady.

Most of the testimony of Mrs. Clark was excluded by the Chancellor upon complainant's objection that it was hearsay and repetition by her of self-serving statements made to her by Mrs. Howard; and the greater part of Mrs. Howard's testimony was excluded by the Chancellor upon complainant's objection that it related to transactions with, and statements by, the deceased, Mrs. Carrie C. Martin, and was incompetent under our Dead Man Statute (T. C. A. sec. 24-105).

After excluding this evidence, the Chancellor found that the evidence before him wholly failed to make out

a gift of the brooch by Mrs. Martin to defendant Mrs. Howard. Upon full consideration, we fully concur in this finding of the Chancellor.

Apart from the question of its competency, the testimony of Mrs. Howard was insufficient to prove a gift to herself by deceased, because such a gift cannot be made out by the unsupported testimony of the donee alone. Atchley v. Rimmer, supra, 148 Tenn. 312, 255 S. W. 369.

The only other material evidence was the testimony of Mrs. Brady and of Mrs. Kirby. Mrs. Brady, though asked to witness the gift, could not recall what Mrs. Martin said, but the "general impression" she got was that Mrs. Martin "wanted Mrs. Howard to have the pin". This is entirely too vague to prove a gift or a present intent to give. It really reflects nothing more than the witness's own mental reaction or impression. It certainly falls short of proving any intention of Mrs. Martin to pass a *"present interest"* in the brooch to Mrs. Howard. Cf. Figuers v. Sherrell, 181 Tenn. 87, 96, 178 S. W. (2d) 629, 632, 152 A. L. R. 420; Collins v. Alexander, 37 Tenn. App. 129, 141-142, 260 S. W. (2d) 414.

Mrs. Kirby testified that about two months after the gift is alleged to have been made, she heard a declaration by Mrs. Martin that she "was giving a lot of her things" and "was giving it [the pin] to Winnie Howard". This falls short of proving a completed gift, or of proving a present intent to make a gift. It is well settled that a gift cannot be established by proof of declarations of the donor alone. Atchley v. Rimmer, supra, 148 Tenn. 318-325, 255 S. W. 371-373; Chandler v. Roddy, supra, 163 Tenn. 350, 43 S. W. (2d) 400.

And it should be observed that, under the circumstances here appearing, the mere fact that Mrs. Howard had possession of the brooch is no proof of a gift or a delivery of it to her by Mrs. Martin. Where, as here, the claimant had access to the property during the alleged donor's last illness, or where its possession can be reasonably accounted for in any other way, such possession is no evidence of a gift or a completed delivery. Atchley v. Rimmer, supra, 148 Tenn. 307-311, 255 S. W. 366; Miller v. Proctor, 24 Tenn. App. 439, 448, 145 S. W. (2d) 807, 812.

*Third.* We think that the exclusions of the testimony of Mrs. Clark and of Mrs. Howard were not error. The excluded parts of Mrs. Clark's testimony were immaterial, hearsay, and self-serving statements of Mrs. Howard. The excluded parts of Mrs. Howard's testimony were incompetent under our statute (T. C. A. sec. 24-105). Atchley v. Rimmer, supra, 148 Tenn. 314-317, 225 S. W. 369-370.

The other ruling complained of was the admission of testimony by the doctor, nurse, and a niece of Mrs. Martin tending to show her mental deterioration during the period between the time she made the will and the time when she is alleged to have made the gift of the brooch to Mrs. Howard. This was not error.

All of the assignments of error are overruled. The Chancellor's decree is affirmed, and the costs of the appeal are adjudged against appellant Mrs. Howard and the surety on her appeal bond.

Hickerson and Shriver, JJ., concur.