Glenn SLEDGE and wife, Ruby Aline Sledge, Plaintiffs-Appellees,

v.

D. C. LAYMAN, Max Layman and Van R. Michael, Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

Nov. 2, 1979.

Certiorari Denied by Supreme Court Feb. 25, 1980.

Van R. Michael, Michael & Michael, Sweetwater, for defendants-appellants.

J. Lewis Kinnard, Kinnard & Wilson, Madisonville, for plaintiffs-appellees.

## OPINION

SANDERS, Judge.

This case involves the question of whether or not a gift was made by the holder of a deed of trust and note in his lifetime to the maker.

In July, 1968, D. C. Layman and wife conveyed a 3.91-acre tract of land in Monroe County to the Plaintiffs-Appellees, Glenn Sledge and wife, Ruby Sledge. As a part of the consideration the Plaintiffs executed a deed of trust on the property to the Defendant-Appellant, Van R. Michael, Trustee, to secure a note payable to D. C. Layman for $2,832.50. The note was payable at $50 per month beginning August 1, 1970. It bore 6% interest and the interest was to be payable on August 1 each year prior to the commencement of the monthly payments. On March 28, 1969, the Plaintiffs made a payment of $50 on the note. On August 21, 1969, they paid the interest of $169.95. In the meantime Mr. Layman had delivered the deed of trust and note, along with other papers, to Mrs. Blanche Sledge who worked for him and maintained an apartment in his residence. Mrs. Sledge is the mother of the Plaintiff, Glenn Sledge.

In June, 1976, Mr. Layman died without having received any further payments on the note. Mrs. D. C. Layman qualified as administratrix of Mr. Layman's estate but did not find the deed of trust and note among his papers. Not having found the deed of trust and note, Mrs. Layman called the Plaintiff, Glenn Sledge, and asked him how much he still owed, to which he replied, "It's done been settled between me and Clarence." After this conversation the unreleased deed of trust was found of record in the register's office in Monroe County and the Defendant, Max Layman, requested the Defendant, Michaels, as Trustee, to start foreclosure proceedings. When foreclosure proceedings were started the Plaintiffs filed suit in the chancery court to enjoin the sale, contending D. C. Layman had delivered the deed of trust and note to them in his lifetime with the intention of forgiving the indebtedness and releasing the deed of trust some time in the future. The Defendants answered, denying the Plaintiffs' allegations.

The case was tried before the chancellor who found the issues in favor of the Plaintiffs. He permanently enjoined the sale and ordered a release of the deed of trust of record.

The Defendants have appealed, asserting the action of the chancellor as error.

The issues on appeal challenge the sufficiency of the evidence to support the findings by the chancellor and insist that without the evidence offered by the Plaintiffs in violation of T.C.A. § 24–105 (the Dead Man's Statute) there is no proof to support the decree.

We think there is merit in the insistence of the Defendants in that the Plaintiffs have failed to meet the necessary criteria of proving a gift was made by the deceased to them.

The Plaintiff, Glenn Sledge, testified their infant child died in July, 1969. When the first interest payment came due in August, 1969, he took a check to the deceased for the interest but told the deceased that because of expenses in connection with the death of the child he could not afford to pay for the lot and wanted the deceased to take it back. He further testified the following

morning the deceased arrived at his home early in the morning with the deed of trust and note and delivered them to him. The court sustained objections to further conversation with the deceased about the matter. The Plaintiff, Ruby Sledge, corroborated the testimony of her husband as to the delivery of the papers by the deceased to their home. The proof shows the deceased subsequently cashed the check for the interest.

Mr. James R. Sledge, brother of the Plaintiff, testified he had purchased a lot from the deceased prior to the time the Plaintiffs purchased their lot. He owed the deceased $1,200 on the lot and when he went to pay the indebtedness the deceased insisted on accepting only $600 in full payment. He related this transaction to a gift made to the Plaintiffs. He was asked if he had any conversation with the deceased about any transaction involving the Plaintiffs and he said:

"A. Yes, sir, he did.

"Q. What did he say?"

\* \* \* \* \* \*

"A. Well, he said the reason he was going to knock that off that he gave Glenn that down there and that we had all been good to him and he wanted us to have a little something he had . . . ."

This conversation allegedly took place in December, 1969.

Blanche Sledge, mother of the Plaintiff, Glenn Sledge, testified she maintained an apartment in the home of the deceased for some 10 years prior to his death. She testified the deceased had turned the papers over to her, which her sons, Glenn Sledge and J. R. Sledge, had given him in connection with the purchase of their properties. She said:

"A. Mr. Layman gave them to me, said that if anything happened to him before they was paid off he didn't want Max (his son) collecting from him, that he wanted J. R. and Glenn to have it."

She testified J. R. paid his note and deed of trust off prior to Mr. Layman's death and she surrendered the deed of trust and note at that time. She further testified concerning Plaintiff Glenn Sledge's papers that "he (Mr. Layman) told me that afternoon that Glenn had talked to him that Glenn was wanting to let him have it back, and then, the next morning he came upstairs and got the papers from me before he went to Glenn's."

The decedent's son, Max Layman, testified his father had told him that Glenn still owed him for the property but he was going to give him every possible opportunity to pay for it. He also testified that the night his father went to the hospital about two weeks before his death he told him and his wife Glenn still owed him for the property. His wife, Frances Layman, also testified to this effect.

The case at bar is controlled by the principles of law announced by the Supreme Court in the case of *Atchley v. Rimmer*, 148 Tenn. 303, 255 S.W. 366. In that case the defendant, Mrs. Rimmer, was claiming a note by virtue of a gift from her father, Mr. Walker, during his lifetime. The Court said:

"Counsel for Mrs. Rimmer, realizing that, in order to make out the gift, it was necessary to show both an intention upon the part of Walker to transfer the title of the note and actual delivery of the same by clear, ample, and convincing evidence, contend that this has been accomplished:

"(1) By presumption of delivery of gift from the fact of Mrs. Rimmer having possession of the note; (2) by the testimony of Mrs. Rimmer herself that Walker in person delivered the note to her with the statement 'This is yours;' (3) by declarations of the donor made to witnesses after the gift that he had given and delivered the note to Mrs. Rimmer."

In addressing the question of a presumption of gift by delivery the Court said:

"To say that mere possession proves a *prima-facie* case of ownership is to substi-

tute presumption where proof is required. Indeed, possession may under some circumstances afford a presumption against ownership; for example, the possession of stolen goods makes a *prima-facie* case of larceny against the possessor. Possession may or may not afford evidence of ownership; certainly a presumption of ownership does not arise in the absence of facts and circumstances tending to show that it resulted from transfer of title. . . . That mere possession of promissory notes does not create a presumption of ownership is illustrated, and was so held by this court in *Allen v. Hays*, 139 Tenn. 56, 201 S.W. 135. . . .

" 'Title is presumed to continue until it is shown to have been divested, and we take it to be the rule that the mere possession of such paper, without indorsement, where there is no evidence of a consideration paid, and no evidence of delivery except possession, is an insufficient showing of the passing of title of the defendant. . . . The mere possession of a negotiable promissory note or any negotiable instrument, the title to which passes under the law merchant by indorsement and delivery, is not *prima-facie* evidence of ownership as against the payee. The absence of the *indicia* of ownership is wanting, and mere possession does not supply this.' *Roy v. Duff*, 170 Iowa 319, 152 N.W. 606."

\* \* \* \* \* \*

"The presumption is that title and right of possession is with the original owner, and the burden is on the claimant to show that his possession is rightful. . . . It would be an easy matter to deprive the owner of his property, if in such a case he were required not only to make his action good by showing title in himself, but must, in some other manner than the exhibition of his title, negative the idea that the possession of the defendant is wrongful."

In addressing the issue of the testimony of Mrs. Rimmer that Mr. Walker delivered her the notes with the statement, "This is yours," the Court said:

"Of course, if we accept in full the testimony of Mrs. Rimmer on this subject, her possession of the note is satisfactorily accounted for. Indeed, the fact of possession would be wholly unnecessary in that event, because she does testify that Walker actually delivered the note to her and made her a complete gift of the same. This raises the question of how far, if at all, the court can accept her testimony on this subject. The *quantum* of proof required by the rule precludes the acceptance of the testimony of the donee alone, unsupported by facts and circumstances or other corroborative evidence. We have concluded that she cannot be corroborated by her possession of the note under the circumstances existing. The very reason of the rule which requires the proof to be ample, clear, and convincing because of the opportunity afforded in cases of this sort for fraud, and the facility with which after the death of the donor fraudulent claims of ownership may be founded upon pretended gifts made during the lifetime of the donor, precludes the acceptance by the court of the statements of interested parties alone to establish the gift."

In support of Mrs. Rimmer's third contention as to the declarations made by the deceased that he had given the note to her she offered the testimony of five witnesses who testified Mr. Walker told them he had given the note to Mrs. Rimmer. In addressing this issue the Court held that the mere statement of the deceased that he had made the gift was insufficient. It held it was necessary to prove delivery of the gift. It said:

". . . very few dishonest claims could be defeated, if left open to established by bare declarations of a gift which did not relate the facts and circumstances making up a legal gift; that it is better to require strict proof of actual delivery or some act or circumstance amounting to

an actual delivery rather than attribute delivery to a declaration of gift."

The principles laid down in *Atchley v. Rimmer, supra,* were approved in the case of *First National Bank v. Howard,* 42 Tenn. App. 347, 302 S.W.2d 516.

The assignments of error are sustained. The decree of the chancellor is reversed and the case is remanded to the trial court for the entry of a decree in keeping with this opinion. The cost of this appeal is taxed to the Appellees.

PARROTT, P. J., and FRANKS, J., concur.