# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 18, 2010 Session

## IN Re THE ESTATE OF SEPAL FLOGENE BOREN EMBERTON, DECEASED

**Appeal from the Probate Court for Warren County**
**No. 2128-P     Larry B. Stanley, Jr., Judge**

---

**No. M2010-01125-COA-R3-CV - Filed December 20, 2010**

---

This is an appeal from the probate court's award of $66,107.14 to Decedent's Estate for the value of property Decedent's husband did not return to the Estate following her death. The Administrators of the Estate appeal the court's failure to award the Estate the value of certain jewelry the husband allegedly converted. The husband appeals the court's valuation of the property he failed to return to the Estate. Because the evidence does not preponderate against the court's findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court AFFIRMED**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

H. Thomas Parsons, Manchester, Tennessee, for the appellants, Carolyn Clemons and Glenna Godwin.

William J. Butler, Lafayette, Tennessee, and Frank D. Farrar and Robert Wesley Newman, McMinnville, for the appellee, Cleveland H. Emberton.

## OPINION

### I. Facts and Procedural History

Sepal Flogene Boren Emberton ("Decedent" or "Mrs. Emberton") and Cleveland H. Emberton ("Mr. Emberton") married on November 16, 2000 at the ages of seventy-six and sixty-nine years old, respectively. The couple entered into an antenuptial agreement which provided that each spouse's separate property should pass to his or her heirs upon death. Mrs. Emberton died on May 19, 2007 and was survived by her three daughters.

Prior to her marriage to Mr. Emberton, the Decedent owned and operated Boren's Jewelry, a family jewelry store. In 2002, the Decedent closed Boren's Jewelry; however, she kept several items of unsold inventory in the store's safe. Mr. Emberton used the store as storage for some of his personal items, including his lamp collection. In addition to the jewelry store inventory, the Estate consisted of furniture, personal jewelry, and other personal property which the Decedent kept at the home she shared with Mr. Emberton.

On June 15, 2007, Carolyn Clemons and Glenna Godwin ("Plaintiffs"), two daughters of the Decedent, filed a Petition for Letters of Administration to probate the Decedent's Estate in the Probate Court for Warren County. In an Order for Intestate Administration, the probate court appointed Plaintiffs as the personal representatives of the Estate. On March 31, 2008, Plaintiffs filed a Complaint against Mr. Emberton, alleging that he converted certain personal property owned by the Decedent, including furniture and personal jewelry, as well as inventory from Boren's Jewelry. Plaintiffs asked the court to award the Estate the fair market value of the property Mr. Emberton allegedly converted. Mr. Emberton answered, denying the allegations of conversion.

The court conducted a bench trial on June 26 and July 1, 2009, at which twelve witnesses testified and twenty-eight exhibits were entered. The court entered an Order on July 29 awarding Plaintiffs a judgment in the amount of $66,107.14—the value of Decedent's personal property that Mr. Emberton failed to return to the Estate. In determining the amount of the judgment, the court itemized each piece of property and assigned a monetary value for each item. The judgment did not include any of the inventory Plaintiffs allege Mr. Emberton took from the safe at Boren's Jewelry.

Plaintiffs filed a Motion to Alter or Amend the judgment in which, among other things, they requested the court to award the Estate the value of the inventory Mr. Emberton allegedly converted from Boren's Jewelry. Mr. Emberton also filed a Motion to Alter or Amend in which he asked the court to reduce the amount he was ordered to pay the Estate. On April 23, 2010, the court entered an order denying Mr. Emberton's motion. In the order, the court found that the proof did not sustain a finding that Mr. Emberton removed the items from the safe and declined to award the Estate the value of the inventory.

Plaintiffs timely filed their Notice of Appeal and contend that the trial court erred in finding that the proof was insufficient to show Mr. Emberton converted the jewelry from the safe at Boren's Jewelry. Mr. Emberton appeals the probate court's award of $66,107.14 and argues the court improperly valued the Decedent's property.

## II. Standard of Review

When a civil action is heard by a trial judge sitting without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *Huffman v. Huffman*, No. M2008-02845-COA-R3-CV, 2009 WL 4113705, at *3 (Tenn. Ct. App. Nov. 24, 2009). The evidence preponderates against a trial court's finding of fact when it supports another finding of fact with greater convincing effort. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). When reviewing a trial court's factual findings, which derive from the testimony of witnesses, we do not re-evaluate a trial judge's assessment of witness credibility. *See Boyer v. Heimermann*, 238 S.W.3d 249, 254–55 (Tenn. Ct. App. 2007). We review the trial court's conclusions of law *de novo*, with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

## III. Analysis

### A. Value of Allegedly Converted Inventory

Plaintiffs contend that circumstantial evidence adduced at trial was sufficient to establish that Mr. Emberton converted the jewelry in the store safe and that, consequently, it was error for the probate court not to include an award for the value of the inventory. In resolving this issue, we must determine whether the evidence presented at trial on the claim of conversion of the inventory, which was largely circumstantial, preponderates against the trial court's finding that Mr. Emberton did not convert the inventory. *See* Tenn. R. App. P. 13(d). We will not substitute our own inferences regarding circumstantial evidence for those inferences drawn by the trier of fact. *See State v. Evans*, 108 S.W.3d 231, 236–37 (Tenn. 2003).

On the issue of conversion of the jewelry in the safe, Ms. Clemons testified that on May 31, 2007, she saw Mr. Emberton enter Boren's Jewelry with Jimmy Cunningham, a locksmith. She testified as follows:

> I was -- had just come out of work, so I could see across the street. And I saw a car over there. And I thought it looked like C.H.'s car, but I wasn't really sure. And then there was a van that was parked in between -- there was a van parked there also, and I really didn't know what kind of van it was -- who it belonged to.

Anyway, I just sat there and I observed. And C. H. was going in and out of the jewelry store, and he would come to the right side of his car and go to the back seat. It looked like he was putting something in the back seat, and then he would go to the left side of the -- he would go back in the jewelry store, and then he would come out again and go to the left side of the car, then he would go to the right side of the car.

And I just sat there, and I counted it. And I counted at least seven times that he came out to the car. And it was always the opposite side. The very first time I observed him coming out he went to the driver's side of the car. And every time he came out, it kept being the opposite side of the car.

She testified further that when she went to the storefront to determine why Mr. Emberton and Mr. Cunningham were in the store, she witnessed Mr. Emberton standing in front of the open jewelry safe. Ms. Clemons testified that when she asked to speak with Mr. Emberton he "threw his hand at [her]" and said, "I don't want to talk to you."

Mr. Emberton testified regarding his presence in the store on that day, and he acknowledged that he refused to allow Ms. Clemons to enter the store. Mr. Emberton and the court engaged in a lengthy dialogue, including the following colloquy:

THE COURT: I don't -- you're not answering my question. If you knew that when Sepal died, her daughters got the store, and then Sepal died and you're in the store messing with the safe and stuff and her daughters come and knock on the window and say, hey, what are you doing and you don't talk to her, why would you not say, hey, come on it? I'm doing this for you-all.

THE WITNESS: I didn't do it but evidently -- I didn't do it because I -- I wanted them to have that jewlry [sic] store, but I wanted those kids to get their thing. And that's --

THE COURT: Well, what --

THE WITNESS: That's what I found out, that that --

THE COURT: Why did it matter to you whether it went to her daughters or her grandchildren?

THE WITNESS: Because Sepal wanted it to.

THE COURT: Okay.

-4-

. . .

    THE COURT:  Well, what were you doing, if it wasn't your property?

    THE WITNESS:  I was getting him to change the combination.

    THE COURT:  To their property?

    THE WITNESS:  That was -- the combination to that safe, they all had it.  They had that combination, and that's why that I had the lock on the door --

    THE COURT:  But they couldn't get in the door?

    THE WITNESS:  No, because it was locked.

. . .

    [MR. EMBERTON'S COUNSEL]:  Were you concerned about things coming up missing in the safe?

    THE WITNESS:  Yeah.  I'm concerned about it missing, but I can't do nothing about that.

When asked if he took any jewelry from the store, Mr. Emberton responded, "I didn't take anything out of there."  Additionally, Mr. Cunningham testified that he did not see Mr. Emberton remove anything from the store.

The trial court went to great lengths in questioning Mr. Emberton regarding his actions and intent at the jewelry store and in changing the lock to the safe.  The court took its time to carefully question Mr. Emberton, who was seventy-nine years old at the time of trial and testified that he had an eighth grade education; the court was in a unique position to observe Mr. Emberton's demeanor and to assess the tone of his testimony.  In light of the testimony of Mr. Emberton, which was supported by that of the locksmith, Mr. Cunningham, as well as the absence of any direct testimony of conversion, we find the evidence does not preponderate against the trial court's finding that there was insufficient proof to show that Mr. Emberton removed inventory from the jewelry store.

Plaintiffs also contend that the failure of the trial court to specifically find Mr. Emberton to be credible should be construed as a finding that he was not credible.[1]  This

---

[1] In their brief, Plaintiffs state:

(continued...)

contention is without merit.  The trial court is uniquely situated to make credibility determinations and to weigh the evidence.  The fact that the trial court declined to specifically rule regarding Mr. Emberton's credibility does not undermine its finding that "[p]roof presented at the hearing and by deposition was not sufficient to show that Mr. Emberton removed stock, including trays of jewelry and a man's watch, from the jewelry store."

## B.  Value of Property Not Returned to the Estate

Mr. Emberton argues that the trial court erred in ordering him to pay $66,107.14 for the value of certain property he failed to return to the Estate.  In particular, Mr. Emberton contends Plaintiffs were incompetent to testify as to the value of Decedent's property and that it was improper for the court to consider evidence of the value of similar items listed for sale on eBay.com—an on-line auction web site—when determining the monetary award to the Estate.

In Tennessee, a property owner may offer opinion testimony on the value of his or her property without showing any special qualifications.  Tenn. R. Evid. 701(b).  This Court has previously opined that, "the conservator of an absent or deceased party's property stands in the shoes of the absent or deceased party and, therefore, may testify with regard to the value of the absent or deceased party's property under Tenn. R. Evid. 701(b)."  *Levine v. March*, 266 S.W.3d 426, 440 n.15 (Tenn. Ct. App. 2007) (citations omitted).  Likewise, Plaintiffs, as co-Administrators of the Decedent's Estate, took legal title of the Decedent's personal property in trust for the purpose of administration of the Estate; therefore, they were competent to testify as to the value of the personal property pursuant to Tenn. R. Evid. 701(b). *See* Tenn. Code Ann. §31-2-103 ("Upon qualifying, the personal representative shall be vested with the personal property of the decedent . . ."); *In re Estate of Hendrickson*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *7 (Tenn. Ct. App. Feb. 25, 2009) ("The law in Tennessee is clear that upon the appointment of a personal representative, the title to all of the decedent's general personal estate is vested in the representative.") (citing *First Nat'l Bank v. Howard*, 302 S.W.2d 516, 518 (Tenn. Ct. App. 1957)).

Finding that Plaintiffs were competent to testify to the value of the property not returned to the Estate, we next turn to whether the evidence preponderates against the trial court's award of $66,107.14 to the Estate.  Plaintiffs testified that they were in the

---

[1](...continued)
The Plaintiffs believe that the evidence in this case does preponderate against the finding of the Trial Court, based upon the facts in the court's findings that the plaintiffs were credible and its obvious finding that C. H. Emberton was not credible.

Decedent's home shortly after her death to retrieve family photographs, jewelry, and clothing for the funeral. Ms. Godwin testified that she observed the furnishings and contents of Decedent's home and "everything was as it should have been. Nothing was out of order." When Plaintiffs requested Mr. Emberton to return the Decedent's personal property to the Estate, Mr. Emberton refused to relinquish certain items, stating either that they had been sold or that he was unaware of their whereabouts. Plaintiffs introduced an exhibit at trial itemizing the property they asserted Mr. Emberton failed to return to the Estate. With regard to this exhibit, Ms. Godwin testified as follows:

> It was hard to do, but the three of us girls did our own individual list and just from memory of what was in Mom's house -- what we knew was there. Just kind of walked through in our minds and noted pieces of furniture, lamps, jewelry boxes, dolls, Tupperware, oak table -- oak dining room table, marble top tables in the living room, and on -- then once we got together and combined our lists, then we tried to put a value on everything individually.

> The only way I knew how to put a value on everything -- a good fair market price was through eBay. I buy some and sell a little bit on eBay. And I thought that would be a good rule of thumb to get individual prices on Mom's belongings. It's the only way I knew how, and Carolyn's an expert in antique values. She's dealt in antiques. I don't. So we kind of -- between her expertise there and my working with eBay -- combined our efforts to get -- to try to put values on things.

Mr. Emberton insists that this testimony, and the eBay.com exhibits presented along with it, was speculative and inadmissible to establish the value of Decedent's missing property. We disagree. The testimony presented by the administrators of Decedent's Estate was competent evidence of the value of the property. Any speculative nature of the testimony goes to the weight of the evidence, not its admissibility. Moreover, the total value of the itemized listing of personal property in Plaintiffs' exhibit was $81,573.76. The trial court ultimately awarded Plaintiffs only $66,107.14. It is clear that the trial court did not accept the Appellant's valuation wholesale; rather the trial court examined the evidence and made adjustments to the value of the award based on other proof presented at trial, inlcuding the cross-examination of Ms. Godwin.[2] The evidence in the record does not preponderate against the court's award to the Estate and we will not disturb the judgment on appeal.

---

[2] For example, Plaintiffs listed a washer and dryer on their itemized property exhibit for a value of $350.00 each. In its July 29, 2009 Order, the probate court valued the washer and dryer at $150.00 each.

## III. Conclusion

For the forgoing reasons, this Court AFFIRMS the court's judgment in all respects.

_____
RICHARD H. DINKINS, JUDGE