IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2000 Session

## DOROTHY CATHCART v. JAMES MARK TILLAR, ET AL.

**Appeal from the Circuit Court for Lawrence County**
**No. CC-564-98     Robert Holloway, Judge**

---

**No. M2000-01439-COA-R3-CV - Filed June 1, 2001**

---

This case presents the issue of whether the administrator of an estate breached his fiduciary duty, under the circumstances herein presented, when he failed to see that an asset of the estate worth in excess of $10,000 was properly insured. We find that Defendant breached his duty when, after he was informed by Plaintiff that she had paid off the bank note on the mobile home after attempting to sell it, he failed to make any inquiries into who would pay the insurance, how the insurance would be paid, when the insurance was due, or whether any insurance was in effect. This breach of duty caused loss to the estate when the mobile home was destroyed by a tornado while uninsured. As a result, we find Defendant liable to the estate in the amount of $11,415, as this is the amount the proof showed would have been paid by insurance.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Randy Hillhouse, Lawrenceburg, Tennessee, for the appellant, Dorothy Cathcart.

W. Charles Doerflinger, Lawrenceburg, Tennessee, for the appellees, James Mark Tillar, as Administrator with Will Annexed of the Estate of Jerry Don Bruton, American Family Home Insurance Company, and Jewell Bruton and Ernestine Hughes.

**OPINION**

**Facts**

The law in this matter is relatively simple. We are basically dealing with the fiduciary duty of an administrator. However, the facts in this case are worthy of a bar exam question, and the matter of how to apply these convoluted facts to the law is the difficult issue presented to this Court.

This case arises out of the estate of Deceased, Jerry Bruton, who was married and had three children, one of them a minor, but was estranged from his family. Mr. Bruton had been residing with

Plaintiff, Dorothy Cathcart, for the eight years preceding his death. Plaintiff and Mr. Bruton lived together in a double-wide mobile home which sat on property owned by Mr. Bruton's mother. They had lived in this mobile home together since its purchase, and this piece of personal property was the primary asset of Mr. Bruton's estate and is the subject of this litigation.

Mr. Bruton died on February 9, 1997. For almost a year following his death, no will was found, and no action was taken by his family to settle his estate for over four months. Finally, in June of 1997, Mr. Bruton's mother, Mrs. Bruton, asked a local pastor, Mr. James Mark Tillar, to serve as administrator for the estate. Defendant, Mr. Tillar, agreed to perform this function as a favor and without payment. A petition was filed to begin administration of the estate on June 25, 1997. Notice to creditors was given on that same day.

Two claims were filed against the estate. The first was filed on September 15, 1997 for payment of a $300 ambulance bill. The second was filed on February 2, 1998 for a credit card balance of $2,808.83. No exception was filed to either claim and the record contains no information regarding the status of these claims.

At some point, either in December of 1997 or January of 1998, Plaintiff discovered Mr. Bruton's holographic will. This will was dated December 17, 1996 and read as follows:

> I Jerry Bruton being of sound mind and body make this my last will and testament being that this is my last will I would like to make this list. Dorothy Lee in the event of my death gets our home to live in it is not to be sold or rented to anyone.
>
> I have also given Dorothy Lee my other wishes which is to see that all of my children receive something personal of mine and everything else is to be done with as Dorothy Lee sees fit.

On January 26, 1998, Plaintiff, Ms. Bruton, Defendant and Mr. David Comer, the attorney hired by Ms. Bruton to assist in handling the estate, met in Mr. Comer's office to go over the will. At that time, a petition was drafted to have this will admitted to probate. The order admitting the will to probate was signed on February 5, 1998.

Plaintiff had previously considered the idea of selling the mobile home. On January 27, 1998, the day after Plaintiff's meeting with Defendant and Mr. Comer regarding the will, Plaintiff attempted to sell the mobile home to Mr. Jerry Wayne Kilpatrick. She had Mr. Kilpatrick issue a cashier's check for the amount of the lien on the mobile home, just under $10,000, and went with Mr. Kilpatrick's daughter to the bank to pay off the loan against the mobile home. After Mr. Kilpatrick paid off the loan, the bank provided Plaintiff the title, which showed that the mobile home was titled only in the name of Deceased, Jerry Bruton. (Plaintiff testified that prior to this date, she believed the mobile home to be titled in both her name and Deceased's.) After paying off the loan, Plaintiff contacted Defendant and requested that he sign over the title to her so that they could complete the sale. Total sale price of the mobile home was to be around $13,000.00. Defendant

refused to sign over the title, and no further action was taken by anyone with regard to closing the estate or concluding the sale of the mobile home.

On April 16, 1998, the mobile home was destroyed by a tornado. Subsequent to its destruction, the parties discovered that insurance on the mobile home had lapsed on February 8 for nonpayment of premium. Plaintiff allowed Mr. Kilpatrick to obtain a judgment against her and then filed a claim against Mr. Bruton's estate for $18,500, as well as this action against Defendant Tillar and his sureties, Ms. Jewell Bruton and Ms. Ernestine Hughes. Plaintiff alleged in her complaint that, since Defendant "did not obtain other insurance as concerned the mobile home, adjacent structures, and contents, then he failed in his duties." Plaintiff asked for monetary damages for the value of the mobile home, adjacent structures, and contents.

Also named in this complaint was American Family Home Insurance Company, the insurance company that had previously insured the mobile home and Mr. Bruton. American Family Home Insurance Company was dismissed from the complaint on summary judgment.

Defendant Tillar testified that Deceased's mother, Ms. Bruton, requested that he serve as administrator of the estate as a favor. He had agreed to receive no payment for his services. Ms. Bruton also hired an attorney, Mr. David Comer, to assist with the estate. Following his appointment as administrator, Defendant met with Ms. Bruton and Plaintiff to determine what assets were part of the estate. He was informed that the only assets in the estate were the mobile home and a Volkswagen truck. The Deceased had also owned an Isuzu truck, which was jointly titled to him and his mother and which title passed to Ms. Bruton before Defendant was appointed administrator. Defendant was further informed that Ms. Bruton and Deceased had a joint account but was given no information about this account.

Defendant is a Church of God minister with only a high school education. He had no prior experience with estate administration; however, he consulted with Mr. Comer, the attorney hired by Ms. Bruton, on everything he did in administering the estate.

Immediately upon being appointed administrator, he inquired regarding who would be making payments on the mobile home and was told that Plaintiff was. Plaintiff continued to reside in the mobile home from the time of Mr. Bruton's death until it was destroyed, although she had another residence where she spent part of her time.

Plaintiff told Defendant on several occasions that she was interested in selling the mobile home, and both parties spoke with Mr. Comer regarding the matter. She also informed Defendant that she had found a buyer, but Defendant informed Plaintiff that she could not sell the mobile home due to questions regarding what interest the will granted to her. He informed her they would look into the matter, but nothing further was done.

Defendant did not know before hand that Plaintiff was going to pay off the bank and only learned of the attempted sale and payoff after the fact. When Plaintiff contacted him to obtain his

signature on the title, he informed her that he could not sign over the title since the property was in probate and outcome of the title was uncertain. Defendant insisted that neither he nor Mr. Comer ever told Plaintiff that the mobile home could be sold.

When Defendant was asked about insurance, he stated that the matter was never discussed with him. Defendant knew nothing about insurance on the mobile home. Since Plaintiff was making payments on the mobile home to the bank, he assumed she was also responsible for the insurance. The estate never had any money, and he was unaware of any items of personal property which could be sold to pay any debts of the estate other than the mobile home. However, Defendant admitted that no inventory was ever filed and no accounting ever done on the estate.

Although Defendant insisted that Plaintiff was never told that she could sell the property, he did recall that, while in the attorney's office, Plaintiff said she had money to pay off the loan and asked whether or not she should do so to save interest. Defendant recalled that Mr. Comer had then informed her that such a payoff would be acceptable. However, there was no mention that this money was the proceeds of a sale.

Plaintiff testified that she and Deceased went together to buy the mobile home and both signed the papers. She believed that she was on the title, as she was present and signed numerous papers at the time of purchase. However, Plaintiff thought she had inadvertently failed to sign the title, thus causing the mobile home to be titled in only the name of Mr. Bruton. She testified that she did not realize that she was not on the title until the day she paid off the loan at the bank.

Plaintiff believed she had the right to sell the mobile home and agreed on a sale price of $13,000, approximately $10,000 to be paid directly to the bank. She went to the bank with the purchaser on January 27, paid off the loan, and had the bank release their lien on the title. After the bank released the title to her, she contacted Defendant to have him also release the title and sign it over to the purchaser. At that time, Defendant informed her that Mr. Comer advised him not to sign the title over. He further stated that they would attempt to get the matter resolved, but she heard nothing more regarding the issue.

Approximately two and a half months later, a tornado destroyed the mobile home along with her personal property and the personal property of Deceased, which was inside the mobile home. Her personal property included a jewelry box, a mirror, a Coleman lantern and stove, dishes, cookware, a computer table, her clothes, a washer and dryer, a lamp, and a desk. There were also items inside the mobile home which had been jointly owned by Plaintiff and Deceased. These items were an antique bed and dresser which they had purchased together. In addition, a satellite television system, which had been jointly owned by Plaintiff and Deceased, was also destroyed. The only item of personal property belonging to the deceased which Plaintiff testified to being in the mobile home at the time of its destruction was a chair valued at approximately $15.00.

Plaintiff also testified that Deceased owned guns at the time of his death valued at approximately $1,500 and an Isuzu truck valued at approximately $2,500. The stove and refrigerator

which came with the mobile home were also destroyed in the tornado; however, there was no testimony with regard to whether the stove and refrigerator were to be sold with the mobile home to Mr. Kilpatrick. In addition, there is no testimony as to the disposition of the Isuzu truck. The guns were claimed by Ms. Bruton to be her property and given to Ms. Bruton prior to administration of the estate.

Plaintiff testified that Defendant never asked what property belonged to deceased and she never informed him. However, she assumed that Defendant knew as a result of discussions which occurred over the course of the estate's administration. After Mr. Bruton's death, Plaintiff provided Ms. Bruton with several items of property including five guns and some chain saws. Plaintiff believed the guns belonged to Deceased and should have been part of the estate.

During the time that Plaintiff lived with Deceased, they shared expenses. Plaintiff testified that she paid half of the bank note and half of the insurance on the mobile home. The mobile home was situated on property owned by Ms. Bruton, and Plaintiff, Deceased and Ms. Bruton shared one mailbox. However, after Mr. Bruton's death, she received no more mail from this mailbox.

Plaintiff further testified that she thought the will had already been probated when she went to the bank on January 27 to pay off the loan on the mobile home. Although she admits that Defendant never told her she could sell the mobile home, she was told that Mr. Bruton's children had relinquished their rights and she knew that Ms. Bruton wanted the mobile home moved off her property as quickly as possible. She stated that "she got the impression she could do whatever she wanted with it."

After paying off the loan, she went over to Ms. Bruton's home and contacted Defendant to tell him. It was at that time she was informed by Defendant that he could not sign the title over to her and "that was the end of it." She never thought of or discussed insurance on the mobile home with Defendant or the buyer and never took any action to have the will construed or conclude her dealings with Mr. Kilpatrick regarding the sale of the mobile home.

When asked about the insurance, she did recall that she and Mr. Bruton paid the insurance bill the year before; she paid half of the insurance. However, she did not remember which of them actually wrote the check. Although she did not know the exact date the insurance was due, she was aware that the insurance came due in the winter. She believed that Defendant, as administrator, was responsible for paying the insurance on the mobile home, although she admitted she never discussed this matter with Defendant as it "never dawned on her". She was also aware that Defendant, as administrator, had never paid any of the other bills and admitted that she never presented any bills to Defendant for payment.

The parties had never discussed her continuing to live in the mobile home; she just never moved out. And, although she felt she had a one-half interest in the home, she never filed a claim against the estate for that interest.

It was Plaintiff's recollection that she was told on January 26 that she should pay off the note and went and did so following that meeting. She had no recollection of Mr. Comer informing her that they would have to go to court before she could sell the mobile home or that she might just have a life estate in the mobile home as opposed to owning it outright. What she did recall was Mr. Comer telling her that if the kids didn't want it, he saw no problem with her having the mobile home because Ms. Bruton could not afford it. Mr. Comer had heard from two of the children, but the third was a minor and he was waiting to hear from a guardian. (However, the probate record shows no filings that would indicate any waiver of rights by the children or the spouse in this matter.)

Sometime after the bank was paid off, Plaintiff remembered discussing the attempted sale and title issues with Mr. Comer. She recalled him saying that he was going to "work on it" and believed that he was going to take care of getting the will construed so that the sale could be completed.

Mr. Kilpatrick, the purchaser of the mobile home, testified that he first spoke with Plaintiff regarding possibly purchasing the mobile home in November of 1997. At that time, he was told by Plaintiff that it could not be sold. Later, Plaintiff informed him that it could be sold, and they went to look at the mobile home on December 25, 1997.

He gave part of the money to his sister to go with Plaintiff to the bank to pay off the note so the title would be released to her. The agreed sale price was either $12,500 or $13,000, but he only paid approximately $9,800 of that money on January 27. He currently has a judgment against Plaintiff for the amount paid to the bank plus interest.

Mr. Kilpatrick also testified that the day he wrote the check he considered the mobile home purchased. Although he asked Plaintiff about insurance, he did not remember her answer and believed that she informed him the mobile home was insured. He did recall that he had checked into insurance prior to "purchasing" the mobile home and believed he would have gotten insurance if she had informed him the mobile home was uninsured. However, he never inquired regarding the amount of the insurance or who paid it.

Attorney David Comer also testified at the trial of this matter. He stated that Ms. Bruton had hired him and he had spoken with her to determine the assets of the estate. These assets were determined to be the mobile home in question and two trucks. There were no bank accounts and no other assets. However, he is not sure if the administrator ever knew what assets were part of the estate. No accounting or inventory was ever filed, although there were claims filed against the estate. He was aware that Plaintiff was to continue to live in the mobile home and make payments to the bank, since Ms. Bruton stated that she could not afford to keep the mobile home otherwise.

Mr. Comer did not remember if he explained the duties of an administrator to Defendant but believed he informed Defendant that it was his duty to marshal and safeguard the assets of the estate.

Mr. Comer first learned that there was a will in December of 1997. This will was brought to him on January 26, 1998. The purpose of that meeting was to have the will authenticated and to draft the petition for probate. At that meeting, he informed Plaintiff that he felt the court would probably give her fee simple interest in the mobile home, but until that happened, she could not sell the mobile home under the will. He does not remember any discussion regarding paying off the bank but specifically remembered telling Plaintiff she did not have the power to sell the mobile home until the judge gave her fee simple title. He did not believe that he would ever have told her to pay off the bank.

The will was admitted to probate on February 5; however, the parties needed to return to court to have the will construed. Mr. Comer has no recollection of telling Plaintiff that he would take the will to court to get a determination of her interest, and no one has ever returned to court and requested such a determination. He had no record or recollection of when he became aware of the attempted sale of the mobile home. The earliest mention of it in his records was February 27, 1998. He did admit that insurance was never discussed, and he gave no advice to Defendant with regard to insurance. It was Mr. Comer's assumption that there was insurance required by the lender and it would be taken care of in that manner.

The court record in this matter also contains information regarding the American Family Home Insurance Policy which expired on February 8, 1998. Under this policy there was only one named insured, Jerry Bruton. Plaintiff was not a named insured, and, as she was not a relative living with Mr. Bruton, she and her personal property would not have been insured had this policy remained in effect. The policy insured the mobile home in the amount of $11,300, Deceased's personal property in the amount of $3,600, adjacent structures in the amount of $1,200, and antennas and satellite equipment in the amount of $100.00. The policy was also a personal liability and med pay policy for Deceased. The total premium of $281 was due under the terms of the policy by January 27.

Although the last policy period ran from February 8, 1997 to February 8, 1998 and Mr. Bruton died on February 9, 1997, it seems to be undisputed that no one informed the insurance company of Mr. Bruton's death. In addition, a copy of the last premium notice shows that this notice was sent on January 6, 1998 to Deceased at Route 4, Box 277, Lawrenceburg, Tennessee. Plaintiff testified that this was the address of the mailbox which she, Deceased, and Ms. Bruton, shared. There is no testimony in the record regarding whether or not Ms. Bruton ever received this notice and, if so, what was done with this notice.

Also admitted into evidence was a copy of a bank statement allegedly showing that Deceased did have a bank account which might be used to pay debts and expenses of the estate. However, the bank statement specifically states that the account is in the name of Jerry Bruton or Jewel C. Bruton, joint tenants with right of survivorship. Thus, the bank account is irrelevant, as any money in this bank account passed to Ms. Bruton outside of probate.

Further, there are several interesting facts missing from the record. There is no testimony or information with regard to the disposition of the Volkswagen truck alleged to be the property of Deceased. There is no information nor a copy of the title with regard to the Isuzu truck which was alleged to be titled in the name of Deceased and his mother and which allegedly passed to Ms. Bruton prior to Defendant's appointment as administrator. There is no evidence as to what was included in the sale of the mobile home other than the mobile home itself, although Plaintiff has made a separate claim for several items of personal property including her washer and dryer, the stove, the refrigerator, and the satellite dish, as well as items of furniture, some of which might have been included in the sale of the mobile home.

Defendant has also taken great pains to allege that the insurance was not paid as a result of the unauthorized payment of the lien against the mobile home. It is Defendant's assertion that if the lien had not been lifted the bank would have seen that the insurance was paid. However, there is no evidence admitted in the record to support these assertions. Although the courts July 26, 1999 order states that "the premium payments had been made from an escrow account funded as a part of the monthly mortgage payment," there is no evidence of an escrow account from which the bank could have made payments; there is no evidence regarding how the bank would have handled payment of insurance if the insured failed to make payments, and there is no evidence as to what might have been included in any insurance provided by the bank. In addition, if there was an escrow account, there is no evidence regarding what happened to the money that had previously been in escrow, to whom it was released and what was done with it.

After hearing all the evidence, the judge, in his order of March 1, 2000, stated:

> The plaintiff Dorothy Cathcart from the time that she sold the mobile home, was in a better position to know about insurance on the mobile home and was in a better position to obtain insurance on said mobile home than was the Defendant, James Mark Tillar.

> Therefore it is Ordered, Adjudged and Decreed that the issues in this Cause be found against the Plaintiff and in favor of the Defendant. . . .

The court then dismissed Plaintiff's complaint with costs taxed against Plaintiff. This appeal subsequently ensued.

With regard to construction of the will, the trial court stated:

> If I was going to interpret the will I would find that to be a life estate and I would find the remainder to be the beneficiaries at law - the heirs at law.

However, the trial court did not construe the will, and to date, there is no evidence that a will construction has ever been pursued.

The record does reflect some reasons for the trial court's ruling in this matter. Said Judge Holloway:

> The problem I have with this case is that the day before this note was paid off the will was brought to Mr. Comer's office. And if there's anything clear about the will - which there's a lot that's not - it is clear that it's not to be sold. And that's one thing - It is not to be sold or rented to anyone before that talks about having it for life or to live in.
> . . .
> Now, the next day, after going over this will which clearly says on its face not to sell the mobile home, Ms. Cathcart goes and sells the mobile home - or attempts to sell the mobile home. . . .
>
> Still the estate, in my opinion, didn't have anything to claim from the mobile home other than the equity. But the fact of the matter remains that even at this point in time one person controlled - or at least two people, until it was paid off, controlled receiving notice of when the insurance payments were due and what to do with that, and that was the potential - the people that had been paying the insurance, one of which is now deceased, and the bank. And through the actions of Ms. Cathcart the bank, who I am sure would have protected this mobile home and made sure that the nine to $10,000 value that was represented by the note owed on the mobile home was covered by insurance, was taken out of the picture.
>
> So I'm going to find - and it's not pleasant - that Ms. Cathcart was more at fault than Mr. Tillar causing this mobile home not to be insured by her actions in paying off the mobile home on the day after meeting with an attorney and going over the will, which on its face stated that it was not to be sold, and in being aware of how the insurance was paid, now understanding that the bank had been paid off. Not doing anything to bring it to the attention, not writing a letter, making demand that insurance be paid. And again, be paid by what? By an estate which at that time had no funds, which also at that time had no claims filed against it. Which even if the demand had been made, assets would have had to have been accumulated and then sold to create funds to even pay the insurance.
>
> So with the totality of the circumstances . . . I find the Plaintiff had a better opportunity to make sure the mobile home was insured, . . . and that she's the one that ultimately took the bank out of the picture.

The judge went on to state that, after listening to all the testimony, he did not believe the testimony that Mr. Comer had advised Plaintiff to pay off the bank. The court felt that Ms. Cathcart's own actions resulted in her injury, that she was the one in the best position to know of and purchase insurance, and that "if she couldn't, the buyer of the mobile home could have."

**Summary of the Law**

    A. Standard of Review

    This hearing is on appeal from the judgment of a non-jury trial. Thus, the standard of review is de novo; however, the trial judge's conclusions are supported by a presumption of correctness unless the evidence in this case preponderates against his determination. Further, the judge's findings of fact dependant on the credibility of the witnesses are entitled to great weight.

> [T]his appeal brings the case to us for review de novo under T.C.A. Section 27-303 accompanied by the usual presumption that the decree of the trial Court is correct unless the preponderance of the evidence is otherwise. This presumption of correctness is entitled to more than the usual indulgence since the case was tried upon oral testimony, thus giving the Chancellor an opportunity, which we do not have, to observe the manner and demeanor of the witnesses while testifying before him and to determine which way the evidence preponderated.
>
> It has been held, both by the Supreme Court and this Court, that where a case is tried without intervention of a jury, upon oral testimony, the trial Judge's findings of fact dependant upon the credibility of the witnesses is entitled to great weight.

*Capital City Bank v. Baker*, 442 S.W.2d 259, 266 (Tenn. Ct. App. 1969) (citations omitted).

> The findings of the trial court which are dependant upon determining the credibility of witnesses are entitled to great weight. The reason for this is that the trial judge alone has the opportunity to observe the manner and demeanor of the witnesses while testifying. On an issue which hinges on the credibility of witnesses, the trial court will not be reversed unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings.
>
> The appellant on appeal has the burden of showing that the evidence preponderates against the findings of the trial court.

*Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990) (citations omitted).

    However, with regard to issues of law, the standard of review is de novo without a presumption of correctness. *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 80 (Tenn. 1996).

    B. Duties of an Administrator

    As the administrator of the estate, Defendant had a fiduciary duty to the estate. This duty is not lessened by Defendant's ignorance in the matters of estate administration nor is the duty any

different for one who is undertaking administration of an estate without compensation. An administrator is "held to the same degree of fidelity and diligence required of others in similar roles." *Greene v. Starnes*, No. 03A01-9312-CV-00439, 1994 WL 317517, at * 2 (Tenn. Ct. App. July 6, 1994) (citing Pritchard on Wills and Administration of Estates, § 669 (4th Ed. 1983)).

> In the custody, management, and disposition of the estate committed to the charge of a personal representative, that person is bound to demonstrate good faith and to exercise that degree of diligence, prudence, and caution which a reasonably prudent, diligent, and conscientious business person would employ in the management of their own affairs of a similar nature. A personal representative is responsible for any negligence causing loss, or for any want of good faith producing injury, in case of failure to perform the duties required of that person.

*Id.* at * 2.

The legal standard of a fiduciary is that he "must deal with the estate and each of its beneficiaries in the utmost good faith. Like any other fiduciary, he is required to exercise the same degree of diligence and caution that reasonably prudent business persons would employ in the management of their own affairs." *McFarlin v. McFarlin*, 785 S.W.2d 367, 369-70 (Tenn. Ct. App. 1989) (citations omitted).

The duty of an administrator also includes the prompt administration of an estate. "Accordingly, an executor has a duty to marshal and collect the estate's assets within a reasonable time. An executor must also discharge its statutory obligations in a timely manner. Finally, an executor must distribute an estate in a timely manner and close its administration as quickly as possible." *McFarland*, 785 S.W.2d at 370 (citations omitted).

The administrator's duty further includes a special duty to minors who may be beneficiaries of the estate. When an administrator knows that an "heir or beneficiary is a minor with no one to look out for his interests[,] . . . the administrator should see to it that someone, or even an appropriate court, will assist the minor in making appropriate decisions . . . during the course of the administration of the estate." *Idell v. Hudson*, No. 03A01-9309-PB-00319, 1994 WL 49061 at * 3 (Tenn. Ct. App. Feb. 18, 1994). The *Idell* Court found that an administrator "may be treated as a constructive guardian, . . . and may be compelled to account for the property as if he were a guardian in fact where, being guardian by nature, he takes the possession and administration of his ward's property." *Id.* (citing 39 Am.Jur.2d Guardian and Ward § 3 (1968)).

An administrator's duty to act as a reasonably prudent business person in the management of their own affairs is further accentuated by Tennessee's law vesting title to personal property in the personal representative. *See* Tenn. Code Ann. § 31-2-103 (Supp. 2000).

> An executor or administrator succeeds to the decedent's personal property; that is, he takes the legal title in trust for the purpose of administration - to pay debts

and distribute the surplus to legatees and distributees; and he has the right to maintain all such suits in equity and actions at law as may be necessary to reduce the property to possession.

*First Nat'l Bank v. Howard*, 302 S.W.2d 516, 518 (Tenn. Ct. App. 1957).

[T]he title to the testator's personal property vests in the executor, upon his qualification, and he has the absolute right to possess and dispose of it. Neither legatees nor distributees have any right in the property until the executor's assent is given. Before such assent, they have only a right to call on him for the surplus after payment of the debts, which is merely a right of action against him, not a title or right to any specific property.
. . .
"The fact that a chattel is specifically bequeathed does not deprive the executor of the power to transfer or dispose of it in due course of administration, unless, by assenting to the legacy, he is parted with the title and vested it in the specific legatee."

*Id.* at 518-19. (citing 2 Phillips' Pritchard on Wills (3d Ed.) § 701.)

The administrator and executor occupy the position of the decedents in their relation to the personal estate. Their appointment operated to vest in them, for the time being, the decedent's title to the general personal estate in which distributees could have no specific interest. They are only entitled to the residue of the general estate after the personal representative has reduced it to money and has paid the decedent's debts.

*Union Planters Nat'l Bank & Trust Co. v. Beeler*, 112 S.W.2d 11, 12 (Tenn. 1938).

**Analysis**

In determining what duty Defendant had with regard to the mobile home at issue, we take note of the fact that, on the date Defendant became administrator of the estate, June 25, 1997, he became vested with title to this mobile home. Having acquired a valuable piece of personal property, it would seem elementary that one would immediately request a copy of the insurance policy, make inquiries with regard to the amount of coverage and its limitations, and contact the insurance company to inform them that their insured was deceased and to determine what actions should be taken to see that the property continued to be insured. Defendant failed to make such an elementary inquiry. As such, Defendant failed to exercise the degree of diligence, prudence, and caution required, that being the same diligence and prudence which he would employ in the management of his own affairs. As such, he is responsible for any loss occasioned by his negligence in failing to inquire regarding insurance on a piece of personal property valued in excess of $10,000.

However, this act of negligence alone might not have caused the loss of the entire value of the mobile home. The judge believed and found that, had Plaintiff not paid off the loan and taken

the bank out of the picture, the bank would have seen that the insurance premium was paid. As this determination was a finding of fact made by the trial judge after reviewing all evidence and seeing all witness testimony, we must give the judge's determination great weight. We cannot say that the evidence preponderates against the judge's finding in this regard. Thus, we uphold the judge's determination that, without Plaintiff's interference, the bank would have seen that the insurance premium was paid. This determination renders the original act of negligence by Defendant, that of failing to inquire about insurance on the mobile home, ineffectual in causing the loss of this asset of the estate, as the mobile home would have continued to be insured in spite of Defendant's negligence.

The judge also made a determination, based on the credibility and demeanor of the witnesses, that the attorney in this matter never informed Plaintiff that she could sell the property or pay off the loan. In fact, Plaintiff admitted that Mr. Comer informed her that there was a minor child from whose guardian they had not heard regarding any claims the minor might make against the estate. Once again, we find the evidence does not preponderate against the judge's determination regarding what exchanges took place between Plaintiff and Mr. Comer prior to the sale of the mobile home.

After making these determinations, the trial judge determined that Plaintiff was the author of her own injuries, as she attempted to sell a piece of personal property to which she did not have title and to which she might only have a life estate. This ruling will be examined in connection wtih Defendant's duties following the attempted sale.

Liability is also claimed against Defendant for failing to sign over the title once Plaintiff informed him of the attempted sale. However, we find that Defendant's actions in this regard were not only within his legal rights, but were his legal duty. As one of decedent's heirs was a minor child, Defendant had an obligation to protect that minor's interest in any personal property until such time as a guardian was legally approved by the court to act for the benefit of the minor. Defendant was a constructive guardian of that minor's interest until the will could be construed giving the Plaintiff title to the property, or the minor was represented by a legal guardian allowing him to relinquish any right to any residuary of the life estate. Thus, Defendant was legally unable to sign over title to the mobile home.

In addition, as of the date the mobile home was sold, two claims had been filed against the estate without exception. Therefore, it is also quite possible that this mobile home would have to be sold in order to pay the debts of the estate. If no other personal property were determined to be in the estate, Defendant would have been left with very little to distribute to Plaintiff after the debts were paid, including the bank note.

With regard to Plaintiff's personal property, this property was never insured under the terms of the policy insuring Deceased and the mobile home. Defendant had no duty to see that Plaintiff's personal property was insured and is not responsible for any loss of Plaintiff's personal property in the tornado.

Finally, we look at the actions taken by the parties following the attempted sale of the mobile home on January 27, 1998. At this point, a third person enters into the picture, Mr. Kilpatrick, the purchaser. Although Mr. Kilpatrick has a judgment against Plaintiff, this claim was never defended by Plaintiff, as Plaintiff allowed this judgment to be taken against her. The trial judge, in ruling for Defendant, believed that Plaintiff was in the best position to know when the insurance came due and see that the property was insured. He further found that even if Plaintiff could not have acquired insurance, the buyer could have.

After the attempted sale of the property, the issue comes down to what were the duties of all parties involved. However, in spite of the actions of others or the possible duties of others involved, the duty of the administrator had not changed, that being to safeguard and marshal the assets of the estate and manage the estate with the prudence, diligence, and conscientiousness that a business person would employ in the management of his own affairs. His duty to properly administer the estate and distribute the assets in a timely manner also continued.

It is undisputed that, at this point, Defendant did nothing. He made no effort to have the will construed, he made no effort to clear any cloud on the title of this mobile home and he, once again, made no effort to check on the status of insurance following this new development. Defendant did indeed again breach his fiduciary duty to the estate. However, this breach of duty was to the estate and all heirs and legatees who might be entitled to a portion of Deceased's estate. Thus, Defendant is only liable to Plaintiff for the amount she would receive after full and final administration of the estate.

Based on the proof entered in this matter, the mobile home was insured for $11,300. The personal property was insured for $3,600; however, the evidence introduced showed that a single chair, worth approximately $15, was the only item of Decedent's personal property destroyed by the tornado. The satellite system, valued by Plaintiff at approximately $4,000, was only insured for $100; thus, had the existing insurance policy been kept in force, the estate would have received $11,415 as shown by the evidence admitted into the record.

We find Defendant's liability to the estate in this matter to be $11,415. This amount represents the actual amount of loss to the estate caused by Defendant's failure to maintain insurance on Deceased's personal property. Any additional amount of loss to Plaintiff was not occasioned by the negligence of Defendant, but by circumstances beyond his control. Further, no evidence was introduced by Plaintiff to show Defendant could or should have concluded administration of the estate prior to the destruction of the mobile home. Although two and a half months passed from the time Plaintiff attempted to sell the mobile home until the mobile home's destruction in April 1998, no evidence was admitted by Plaintiff showing this amount of time to be unreasonable.

The trial judge chose to believe the statements of Mr. Comer over those of Plaintiff, and Mr. Comer testified that he informed Plaintiff what needed to be done but never agreed to undertake a will construction. Although all parties agreed that nothing was done after Defendant's refusal to sign the title, the record is devoid of any testimony or evidence as to why neither Plaintiff nor Defendant

-14-

took any action to undertake a will construction or conclude dealings with the purchaser of the mobile home. Further, there is no testimony in the record regarding what needed to be done to conclude administration of the estate and how long this process should have taken.

**Conclusion**

We find Defendant's only act of negligence causing loss to be his failure to maintain insurance on the property. As a result of this negligence, Defendant is liable to the estate in the amount of $11,415. After final will construction and conclusion of the estate administration, it will be up to the probate court to determine what portion of this money in the estate rightfully belongs to Plaintiff. The trial court's ruling is hereby reversed and the case remanded for further proceedings not inconsistent with this opinion.

_____
WILLIAM B. CAIN, JUDGE